# SAN PEDRO` AND CAÑON DEL AGUA COMPANY v. UNITED STATES.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 7.   Argued October 17, 24, 1892. — Decided November 14, 1892.

*Idaho & Oregon Land Co.* v. *Bradbury*, 132 U. S. 509, affirmed to the point that " the authority of this court, on appeal from a Territorial court, is limited to determining whether the court's findings of fact support its judgment or decree, and whether there is any error in rulings, duly excepted to, on the admission or rejection of evidence, and does not extend to a consideration of the weight of evidence or its sufficiency to support the conclusions of the court."

A bill in equity on the part of the United States to set aside a patent of public lands issued by mistake or obtained by fraud will lie either when there are parties to whom the government is under obligation in respect to the relief invoked, or when that government has a direct pecuniary interest in such relief each of which facts appears to exist in this case, and one of which is not denied in the letter of Attorney General Brewster, which is set forth in the opinion of the court.

When the government has a direct pecuniary interest in the subject-matter of the litigation the defences of stale claim and laches cannot be set up as a bar.   *United States* v. *Dalles Military Road Co.*, 140 U. S. 599, affirmed to this point.

T. was a special agent and examiner of surveys for the Land Department. After this suit had been commenced, he was directed by the Land Department to proceed to the disputed territory and make an examination as to the survey.   He did so, and besides making surveys and taking photographic views, he also obtained thirteen affidavits of witnesses, selected by himself, as to boundaries, etc.   When called as a witness he produced these affidavits as part of his testimony, and gave his conclusions as to the proper boundaries of the grant, based partly at least upon the information obtained from them.   After his deposition containing these matters had been filed in the case, and before the hearing in the District Court, two motions were made by the defendant — one to strike out the entire deposition, and the other to suppress parts of it.   Both were overruled and no exception taken.   The District Court found for the defendant, and entered a decree dismissing the bill. An appeal having been taken to the Supreme Court of the Territory, the entire record was transferred to that court.   There, no new motion to strike out this deposition, or any part of it, was presented, nor were the two motions made in the District Court renewed in the Supreme Court,

Statement of the Case.

or action asked of that court thereon. The Supreme Court reversed the decision of the District Court, and set aside the patent. A motion for a rehearing was made, which was denied. *Held,*

(1) That no motion to exclude the deposition, or any part of it, having been made in the Supreme Court before decision, and it not appearing in the record that the Supreme Court in giving its decision passed upon the question of its admissibility, there was nothing in that decision to review in that regard;

(2) That the action of the court on the motion for a rehearing presented no question for review by this court;

(3) That this court could not review the action of the District Court.

On the facts it appearing that a fraud was committed in making the survey for the patent, and that the defendant was not a *bona fide* purchaser, it is immaterial that the surveyor was not a party to the fraud.

On February 12, 1844, José Serafin Ramirez, a citizen of the republic of Mexico and a resident of Sante Fé, in the department of New Mexico, petitioned the governor of that department for a grant of a tract of land known as the "Cañon del Agua," together with the confirmation of the title to a mine claimed as an inheritance from his grandfather. The material part of the petition is as follows:

"I apply to your excellency in the name of the donation laws of the 4th of January, 1813, and 18th of August, 1824, and in the name of the Mexican nation, asking for a tract of vacant land known as the Cañon del Agua, near the placer of San Francisco, called Placer del Tuerto, and distant from that town about one league, more or less.

"The land I ask for is vacant and without owner and I solicit it because I have no possession or property by which I can support my family. The boundaries solicited are: On the north, the road leading from the placer to the Palo Amarillo; on the south, the northern boundary of the grant of San Pedro; on the east, the spring of the Cañon del Agua; on the west, the summit of the mountain of the mine known as My Own, as will appear by the accompanying document No. 1, for which I ask your ratification and that of the departmental assembly, in the manner that I received it, as an inheritance from my grandfather Don Francisco Dias de Moradillos; and I ask that this title be ratified according to the mining ordinances dated

in the year 1813, title 5, article 1; in view of all of which I pray and request your excellency to grant me possession of the mine, to work it, and the land which it embraces, which is about one league, for cultivation and pasturing my animals, and for grinding ore and smelting metal.          "José Serafin Ramirez.

"Sante Fé, February 12, 1844."

To which petition the departmental assembly and the governor thus responded:

"Departmental assembly of New Mexico.

"In session of to-day the departmental assembly decrees that Don Serafin Ramirez, auditor of the departmental treasury, and the other heirs of Don Francisco Dias de Moradillos, deceased, have a right as grandchildren to the mine referred to in the petition, and title of possession and property, as expressed in the mining laws, and further decrees that his excellency the governor of the department, in conformity with the colonization laws, shall grant the tract of land prayed for.

"Martinez, *President.*

"Thomas Oztiz, *Secretary.*

"Santa Fé, *February* 13, 1844.

"And in answer to your petition I grant you the tract asked for and revalidation of the title to the mine, which are enclosed herewith.

"God and liberty.          Mariano Martinez.

"To Don Serafin Ramirez, auditor of the departmental treasury, Santa Fé."

The same year juridical possession of the tract was given, the description in the certificate thereof being: "On the north, the road of the Palo Amarillo; on the south, the boundary of the Rancho San Pedro; on the east, the spring of the Cañon del Agua; on the west, the highest summit of the little mountain of El Tuerto, adjoining the boundary of the mine known

as Inherited Property, from this date, according to the colonization laws of the republic."

By the treaty of Guadalupe Hidalgo, in 1848 (9 Stat. 922), the Territory of New Mexico was transferred to the United States. In 1859, Ramirez filed with the surveyor general of New Mexico his petition, asking official recognition by this government of his grant. The description in this petition was: " The quantity of land claimed is five thousand varas square, making one Castilian league, and bounded on the north by the placer road that goes down to the yellow timber ; on the south, the northern boundary of the San Pedro grant; on the east, the spring of the Cañon del Agua ; on the west, the summit of the mountain of the mine known as the property of your petitioner, as appears by the original title deeds accompanying the notice, numbered 1, 2, 3, 4, 5." A hearing was had on this application on the 10th day of January, 1860. The surveyor general reported in favor of the grant, and on June 12, 1866, Congress passed the following act of confirmation (14 Stat. 588, c. 118):

" An act to confirm the title of José Serafin Ramirez to certain lands in New Mexico.

"*Be it enacted by the Senate and House of Representatives of the United States in America in Congress assembled,* That the grant to José Serafin Ramirez of the Cañon del Agua, as approved by the surveyor general of New Mexico January twenty, eighteen hundred and sixty, and designated as number seventy in the transcript of private land claims in New Mexico, transmitted to Congress by the Secretary of the Interior January eleven, eighteen hundred and sixty-one, is hereby confirmed: *Provided, however,* That this confirmation shall only be construed as a relinquishment on the part of the United States, and shall not affect the adverse rights of any person whomsoever.

"Approved June 12, 1866."

On August 9, 1866, a survey was made by a deputy surveyor, under the direction of the surveyor general of New

Mexico. This survey, after approval by such surveyor general, was forwarded to the Land Department at Washington, and on July 1, 1875, a patent was issued granting the land with boundaries as established by this survey. The following is a plat of the property as surveyed and patented:

In 1866, Ramirez conveyed the property to Cooley and others, from whom, in 1880, it passed to the present defendant. Thereafter, and on September 15, 1881, this suit was commenced by the United States in the District Court of the First Judicial District of the Territory of New Mexico, to set

aside the patent and annul the title conveyed thereby on the ground of fraud in the survey. An answer was filed, proofs were taken, and the case went to final hearing before the District Court. By that court, on February 16, 1885, a decree was entered in favor of the defendant, dismissing the bill. From such decree an appeal was taken to the Supreme Court of the Territory, which, on January 28, 1888, reversed the decision of the District Court, and entered a decree in favor of the government, setting aside and annulling the patent and the survey upon which it was based; from which decree the defendant appealed to this court.

*Mr. George Hoadly* for appellant

I. The United States has no interest in this controversy, and did not in good faith institute and prosecute this suit.

This proposition is founded on the following letter from Attorney General Brewster, which is on file in the First Judicial District Court of the Territory of New Mexico, and appears in the record of the cause, not as part of the testimony, but as having been filed therein.

"DEPARTMENT OF JUSTICE,

"WASHINGTON, October 17, 1883.

"F. W. CLANCY, Esq.,

"1426 Corcoran St.,

"Washington, D. C. :

"*Sir.* — To your inquiry whether the United States will pay the costs incurred in the case against the San Pedro and Cañon del Agua Company, I answer that the United States has no beneficial interest in the proceeding. It was instituted at the instance of parties who claimed a right to the possession of the lands. Upon their request special counsel were appointed by this Department to commence and carry on the suit, but they were not to be compensated by the United States, and it was the understanding of this Department, as in other similar cases, that whatever costs and expenses were

incurred in the preparation and conduct of the case should be paid by the parties on whose petition the proceedings were instituted. I must decline, therefore, for the government, to pay said costs and expenses or any part thereof.

"Very respectfully,

"BENJAMIN HARRIS BREWSTER,

"*Attorney General.*"

II. The prosecution of this suit is barred by laches.

It is quite true that the action was brought within seven years after the issue of the patent, and it may be urged that: the statute of limitations does not run against the United States, and that the government cannot be guilty of laches. *United States* v. *Dalles Military Road Co.*, 140 U. S. 599.

These considerations might have much force if the suit were brought by the government for its own benefit. They have no application to a case of this character. *United States* v. *Des Moines Navigation Co.*, 142 U. S. 510, is directly in point.

The parties for whose benefit this suit was brought might have been beaten by the defence of lapse of time, had they sued on their claims in their own names. *Bryan* v. *Forsyth*, 19 How. 334; *Meehan* v. *Forsyth*, 24 How. 175.

This question of laches was properly raised by the demurrer overruled by Chief Justice Axtell. *Wollensak* v. *Reiher*, 115 U. S. 96; *Graham* v. *Boston, Hartford & Erie Railroad Co.*, 118 U. S. 161; *Bryan* v. *Kales*, 134 U. S. 126. This is therefore sufficient ground for reversing upon appeal.

It is true that Chief Justice Axtell held with the defendants on the merits, after overruling the demurrer; but upon appeal the fact that the suit was brought too late was a sufficient defence, even though the court might have differed with Chief Justice Axtell on the merits. The following authorities sustain the application of the doctrine of laches to this case. *Badger* v. *Badger*, 2 Wall 87; *Sullivan* v. *Portland etc. Railroad*, 94 U. S. 806; *Brown* v. *Buena Vista County*, 95 U. S. 157; *odden* v. *Kimmel*, 99 U. S. 201; *Coddington* v. *Railroad Company*, 103 U. S. 409; *Young* v. *Clarendon Township*, 132

U. S. 340; *Société Foncière* v. *Milliken,* 135 U. S. 304 ; *Norris* v. *Haggin,* 136 U. S. 386; *Mackall* v. *Casilear,* 137 U. S. 556; *Hanner* v. *Moulton,* 138 U. S. 486 ; *Cressey* v. *Meyer,* 138 U. S. 525; *Underwood* v. *Dugan,* 139 U. S. 380; *Boone County* v. *Burlington & Missouri River Railroad,* 139 U. S. 684; *McLean* v. *Clapp,* 141 U. S. 429 ; *Galliher* v. *Cadwell,* 145 U. S. 368.

III. Much of the testimony of John B. Treadwell and the exhibits attached thereto were incompetent and should have been excluded, and for this reason alone, if there were no other, the decree of the Supreme Court of the territory ought to be reversed and this Court should proceed to final decree upon the merits, or should remand to the Supreme Court of the territory for further proceedings.

Of the importance of this proposition to this case this court can entertain no doubt.

After the taking of testimony upon both sides had been closed and the depositions published, and a day fixed for hearing by order of the court, N. C. McFarland, then commissioner of the General Land Office, on the 14th day of December, 1883, addressed a letter to John B. Treadwell, examiner of surveys, Deming, New Mexico, instructing him as follows, viz.: " To examine the said survey with a view to ascertaining whether the Griffin survey was made in accordance with the call of the grant in order that you may be enabled to testify in court as to the correctness or incorrectness of said survey.

" In case you should find the survey to be incorrectly made, you will ascertain the true location of the calls by such examination as may be found necessary, furnishing notes and diagrams as evidence in the premises.

" It is desired that your examination be made with as little publicity as possible, referring to this office direct for any further information which may be needed.

" It may be necessary for you, in establishing the boundaries of the grant, to take the testimony of witnesses who are familiar with the country and competent to testify in this particular, and should you need the services of an interpreter

you are authorized to employ one and such other assistants as may be required.

"When your examination shall have been completed, which must be at the earliest practicable date, you will advise this office by telegraph and await further orders."

In obedience to this order, Treadwell went on the ground, made a survey, and took the testimony of thirteen witnesses by affidavits *ex parte*. The opinion of Chief Justice Long in this case shows that of the witnesses whose affidavits were thus procured by Treadwell, six had been examined and cross-examined and their testimony filed and published in the case. In the application for leave to take this testimony no reference was made to these *ex parte* affidavits.

After the cause was brought to issue the defendant's solicitors filed their motion, to suppress all the testimony of Treadwell and the exhibits filed therewith, "for the reason that the same is in no way pertinent to the issue in this case; that it is based upon hearsay; that said exhibits contain affidavits of witnesses who have not been produced for cross-examination in this case, and contain certain sketches or pictures, the authorship of which is not stated, and the truth or correctness of which is in no manner substantiated or verified or even stated or referred to, and for other good reasons apparent on the face of the said testimony." This was overruled on the same day.

The defendants then further moved to exclude specified portions of the deposition, viz. : (1) such as was hearsay; (2) such as was taken *ex parte;* (3) because it contained pictures without its appearing by whom they were made, or whether they were faithful representations of anything. This was in like manner overruled.

I respectfully submit that this motion is itself an exception to the testimony. No form is necessary for an exception. All that is needed is that there shall be a distinct objection made to the reading of the testimony and its use by the court, brought to the court's knowledge, and this is shown in this case. Estee's Pleadings, 3d. ed. by Pomeroy, 332.

When the cause came on to be heard in the Supreme Court,

objections were made at the hearing to the testimony of Treadwell and the exhibits thereto.

This was done both orally and by brief, and this constitutes a sufficient exception under the act of Congress regulating the practice of appeals from territorial courts.

Then, after the decision, an application was made for a rehearing. The order of the court refusing this petition contains the following : " The court  .  .  .  does now overrule such petition and refuses to grant the same for reasons set forth in an opinion by Chief Justice Long." The second reason assigned for rehearing was the following : " 2. The court bases its conclusion as to the location of said Sierra del Tuerto largely upon *ex parte* affidavits taken by one John B. Treadwell without notice to any one or opportunity for cross-examination, improperly injected into the record of the court below after all the proofs on both sides were closed, which defendant moved to strike out and suppress before the final hearing as is shown by the record."

Chief Justice Long says, in the opinion which is thus incorporated into the order of the court that " the defendant has filed a petition for rehearing assigning therein twelve reasons why the same should be granted. The  .  .  .  second  .  .  .  points made, are but a repetition of those urged both in oral argument and in the printed briefs and already fully considered and determined. They present no new consideration and are fully met by the opinion."

I submit that the reference in the order, denying the petition for rehearing, in this opinion filed by Chief Justice Long, incorporates the opinion into the record, and that it is not merely a " recorded and filed " opinion as required by the rules of the Supreme Court of the Territory of New Mexico, or a certified opinion as required by the rules of this court, but that it is thus by reference made part of the record of proceedings of the Supreme Court, with the same effect as if the reasons referred to by the court in its order and stated therein to have been " set forth in an opinion by Chief Justice Long," had been incorporated into the order itself.

I further submit that this reference to the opinion shows

that both in the oral argument and in the printed briefs it was objected at the hearing, that Treadwell's testimony and *ex parte* affidavits were without cross-examination or notice to any one improperly injected into the record in the court below, and retained there in the face of the defendant's motion to strike out and suppress. This is the only form in which the objection could have been made in the oral argument and the printed briefs.

And I also submit that the denial of the rehearing to which the defendant was entitled upon the second ground above stated by its counsel, is a sufficient objection and exception to the testimony of Treadwell and the *ex parte* affidavits attached thereto.

*Mr. Assistant Attorney General Parker* and *Mr. Thomas Smith* for appellee.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The Supreme Court of the Territory, at the request of the defendant made and certified a statement of the facts in the case. This is in accordance with the act of April 7, 1874, 18 Stat. 27, which, in section 2, a section providing for the exercise of the appellate jurisdiction of this court over the judgments and decrees of territorial courts, reads : " That on appeal, instead of the evidence at large, a statement of the facts of the case in the nature of a special verdict, and also the rulings of the court on the admission or rejection of evidence when excepted to, shall be made and certified by the court below and transmitted to the Supreme Court, together with the transcript of the proceedings and judgment or decree." Construing this statute, it was held, in the case of *Idaho & Oregon Land Company* v. *Bradbury*, 132 U. S. 509, 514, that " the authority of this court, on appeal from a territorial court, is limited to determining whether the court's findings of fact support its judgment or decree, and whether there is any error in rulings, duly excepted to, on the ad-

mission or rejection of evidence, and does not extend to a consideration of the weight of evidence or its sufficiency to support the conclusions of the court. *Stringfellow* v. *Cain*, 99 U. S. 610; *Cannon* v. *Pratt*, 99 U. S. 619; *Neslin* v. *Wells*, 104 U. S. 428; *Hecht* v. *Boughton*, 105 U. S. 235, 236; *Gray* v. *Howe*, 108 U. S. 12; *Eilers* v. *Boatman*, 111 U. S. 356; *Zeckendorf* v. *Johnson*, 123 U. S. 617." Hence, notwithstanding the large volume of testimony taken and used in the court below has been incorporated into the record sent to us, we are not at liberty to review that testimony for the purpose of ascertaining whether the findings in the statement of facts are or are not in accordance with the weight of the evidence. This narrows materially the range of our inquiry.

The first proposition of the appellant is that the United States has no interest in the controversy, and did not in good faith institute and prosecute this suit. This claim rests upon the fact that in the record is found the following letter:

"DEPARTMENT OF JUSTICE,

"WASHINGTON, *October* 17, 1883.

"F. W. CLANCY, Esq., 1426 Corcoran St., Washington, D. C.

"SIR: To your inquiry whether the United States will pay the costs incurred in the case against the San Pedro and Cañon del Agua Company, I answer that the United States has no beneficial interest in the proceeding. It was instituted at the instance of parties who claimed a right to the possession of the lands. Upon their request special counsel were appointed by this Department to commence and carry on the suit, but they were not to be compensated by the United States, and it was the understanding of this Department, as in other similar cases, that whatever costs and expenses were incurred in the preparation and conduct of the case should be paid by the parties on whose petition the proceedings were instituted. I must decline, therefore, for the government, to pay said costs and expenses or any part thereof.

"Very respectfully, BENJAMIN HARRIS BREWSTER,

"*Attorney General.*"

Apparently the attention of the court below was not called to this letter, nor any action taken in reference to it. It simply appears as a paper filed by some one in the clerk's office, and by the clerk, of his own motion, incorporated into the record. Mr. Clancy, to whom the letter was addressed, was, up to January, 1883, the clerk of the court in which the suit was pending; subsequently, although, so far as the record discloses, not till after October, 1883, he became one of the counsel for defendant.

There are several reasons why the claim of the defendant in this respect cannot be sustained. In the first place, we have no assurance that the letter is genuine. Such a paper does not prove itself. It was not offered in evidence. The court took no notice of it. It was addressed, not to an officer of the court or a counsel in the case, but to a stranger. The clerk, by merely filing such a document, does not adjudicate that it is in fact that which on its face it purports to be.

Again, even if it be regarded as the letter of the Attorney General, it does not contain any such statement as precludes the government from maintaining this action. There is nowhere an intimation that Attorney General MacVeagh, the predecessor of the writer of the letter, when commencing the suit, was not acting in the utmost good faith, and in the belief that the government had a pecuniary interest in the lands, or was under an obligation to third parties, which it could protect only by setting aside this patent; and while the letter declares that the United States has no beneficial interest in the controversy, it does not deny that the United States is under obligation to other parties respecting the relief invoked; and that, it is now settled, is sufficient for maintaining an action to set aside a patent. *United States* v. *San Jacinto Tin Co.*, 125 U. S. 273; *United States* v. *Beebe*, 127 U. S. 338, 342, in which latter case it was said: "And it may now be accepted as settled that the United States can properly proceed by bill in equity to have a judicial decree of nullity and an order of cancellation of a patent issued in mistake or obtained by fraud where the government has a direct interest or is under an obligation respecting the relief invoked." See

also *United States* v. *Missouri, Kansas & Texas Railway,* 141 U. S. 358, 380.

But, chiefly, the statement made by the Supreme Court shows that in fact there were parties to whom the United States was under obligation in respect to the relief invoked; and, also, that the government had a direct pecuniary interest in the relief sought. The application for a grant described a tract of vacant land near the placer of San Francisco called Placer del Tuerto, and distant from that town about one league, more or less. This town, with a varying population of a few hundred, perhaps thousands, of people was in existence before the application of Ramirez for the grant, at the date of the annexation of New Mexico to this country, and at the time of the survey and patent. The inhabitants held their possessions by the indefinite and unrecorded titles of dwellers in Mexican villages. By the treaty of cession, as well as the general law in respect to the acquisition of foreign territory, the United States was bound to respect all existing rights, and among them the rights and titles of these inhabitants. Yet the survey and patent included the town. It is true that the act of conformation, as well as the patent, recites that it is only a relinquishment on the part of the United States, and is not to affect the adverse rights of any person, and it is very likely that the equitable titles of the inhabitants could be established notwithstanding the patent; but the government owed it to them not to burden their equitable rights by an apparently adverse legal title, and having been induced to do so through the fraudulent acts of the patentee and his associates, it is discharging a moral obligation, at least, when it takes steps to set aside such patent, and to relieve them from the apparent cloud on their title.

Further, the statement of facts finds that —

"Outside of the boundary line of the said Cañon del Agua grant as granted to said Ramirez by the government of Mexico there was at the time when the supplemental bill in this cause was filed a mining property of great value, known as the Big Copper mine, yielding valuable quantities of both copper and gold. There were also numerous other mines of the precious metals east of the Cañon del Agua spring.

These mines were and are upon a part of the public domain of the United States, but within the lines of the said grant as fraudulently extended by Ramirez and his confederates aforesaid. The defendant, as shown by its answer to the supplemental bill at the time of the filing of the same, actually occupied and possessed said Big Copper mine, and was extracting ore therefrom, claiming the legal right to do so as against the United States, and was also in possession of the land upon which said other mines were situated, and also claiming the right to the same. The defendant was not so in possession under the mineral laws of the United States as a locator, or claiming under or through any locator by virtue of such mining laws, but was in possession under and by means of the said fraudulent survey, and was claiming under the agricultural patent to Ramirez, the action of the surveyor general thereon, the confirmation by Congress, the survey and patent thereunder, the lawful right to hold said mines and extract therefrom the precious metals for its own use to the exclusion of the United States therefrom, and, in defiance of the mineral laws of the United States, predicating such claim of right upon mesne conveyances from parties holding under and by virtue of said patent.

"The possession of the said mine by the defendant as aforesaid, and the manner in which the same is being worked and carried on, is such as to prevent other mining prospectors from locating thereon or making any claim or acquiring any title thereto by location and development under the mining laws of the United States, and, if permitted to continue, would enable the defendant, under claim of legal title, which does not exist, to continuously extract therefrom large quantities of valuable precious metals, and thus greatly to lessen the value of said property, and to hinder and delay the development thereof, and to prevent location thereon and development under the mining laws of the United States. The claim of said defendant constitutes a cloud upon a title to the said mines and upon the right of the United States to open the same to be prospected, located and developed as mineral land, and deprives it of the revenue which would

otherwise accrue to it from such settlement and development."

The United States has therefore a pecuniary interest in maintaining this action, that it may recover possession of these mines and secure to itself the revenue naturally derivable therefrom.

This last matter is also a sufficient answer to the second point made by the appellant, and that is, that the prosecution of this suit is barred by laches, for it is well settled that when the government has a direct pecuniary interest in the subject-matter of the litigation the defences of stale claim and laches cannot be set up as a bar. *United States* v. *Dalles Military Road Company,* 140 U. S. 599; and cases cited in the opinion.

The third point of appellant is, that much of the testimony of John B. Treadwell, and the exhibits attached thereto, were incompetent and should have been excluded, and because they were not the decree of the Supreme Court of the Territory ought to be reversed. Mr. Treadwell was a special agent and examiner of surveys for the Land Department. After this suit had been commenced, he was directed by the Land Department to proceed to the disputed territory and make an examination as to the survey. He did so, and besides making surveys and taking photographic views, he also obtained thirteen affidavits of witnesses, selected by himself, as to boundaries, etc. When called as a witness he produced these affidavits as part of his testimony, and gave his conclusions as to the proper boundaries of the grant, based partly at least upon the information obtained from them. After his deposition containing these matters had been filed in the case, and before the hearing in the District Court, two motions were made by the defendant — one to strike out the entire deposition, and the other to suppress parts of it. Both were overruled and no exception taken. The District Court, as heretofore stated, found for the defendant, and entered a decree dismissing the bill. An appeal having been taken to the Supreme Court of the Territory, the entire record was transferred to that court. There, no new motion to strike out this deposition, or any part of it, was presented, nor were the

two motions made in the District Court renewed in the Supreme Court, or action asked of that court thereon. Obviously the defendant, relying upon its success in the District Court, with this testimony in the case and before the court, did not deem the matter of sufficient importance either to renew the motions made in the District Court, or to file additional ones, and so let the case pass to the consideration of the Supreme Court with all the testimony, including this deposition, unchallenged. But our inquiry is limited to the rulings of the Supreme Court of the Territory; it is its judgment which we are reviewing. By the appeal the case was transferred as a whole from the District Court to the Supreme Court. The rulings of the former court did not bind or become those of the latter, either as to the admission or rejection of testimony, or the decree to be entered. All the testimony taken and filed in the one court was spread before the other, and was apparently proper for its consideration. If the defendant had wished to narrow the examination of that court to any portion of the testimony, it should by appropriate motion to it have challenged the supposed objectionable parts. Counsel, appreciating this necessity of the case, has endeavored to show that the Supreme Court did in fact rule on the admissibility of this testimony; but we think his contention is not borne out by the record. Certainly no new motion was filed in the Supreme Court, or any entry made of a renewal of the motions in the District Court or of a decision thereon; and if error is to be predicated upon any ruling of the lower court, it would seem that the ruling should affirmatively and distinctly appear. And in this connection notice may well be taken of Rule 13 of this court: "In all cases of equity . . . heard in this court no objection shall. hereafter be allowed to be taken to the admissibility of any deposition, deed, grant or other exhibit found in the record as evidence, unless objection was taken thereto in the court below and entered of record; but the same shall otherwise be deemed to have been admitted by consent."

Upon what grounds does counsel contend that the Supreme Court did rule upon this matter? In the order of the court refusing the petition for rehearing is the following:

" The court . . . does now overrule such petition and refuses to grant the same for reasons set forth in an opinion by Chief Justice Long."

This was the second reason assigned for rehearing:

" 2. The court bases its conclusion as to the location of said Sierra del Tuerto largely upon *ex parte* affidavits taken by one John B. Treadwell, without notice to any one or opportunity for cross-examination, improperly injected into the record of the court below after all the proofs on both sides were closed, which defendant moved to strike out and suppress before the final hearing, as is shown by the record."

And in the opinion is this statement: .

" The defendant has filed a petition for rehearing, assigning therein twelve reasons why the same should be granted. The . . . second . . . points made are but a repetition of those urged both in oral argument and in the printed briefs, and already fully considered and determined. They present no new consideration and are fully met by the opinion."

But this does not show that any motion was made in the Supreme Court or any ruling had thereon. The second reason assigned is, that the court based its conclusion upon this improper testimony. It is true reference is made to a motion to suppress, but it is only by way of description of the improper matter, and the motion referred to is one " shown by the record," and the only such motion is the one made in the District Court. The record shows none in the Supreme Court.

Again, it is insisted that the denial of the rehearing, one of the grounds therefor being that already stated, is in itself a sufficient objection and exception to the testimony. But when the petition for rehearing was filed, the case had been decided. A petition for rehearing is no more significant than a motion for a new trial, which, as well settled, presents no question for review in this court. Further, it would be strange if a case could be submitted on certain testimony and decided, and then the defeated party could by motion for a new trial or petition for rehearing compel the striking out of a part of that testimony, and thus a retrial of the case. By not challenging

the objectionable testimony until after the decision, he waives his right to challenge it at all.

Again, after the decision the defendant made application for a statement of the facts of the case, and also the rulings of the court on the admission and rejection of the evidence, to be transferred to this court, which motion was consented to by the United States, and a statement of facts prepared. Thereafter, the defendant moved to have included in such statement the testimony of Treadwell, the rulings of the District Court on the motions, and also the rulings of the Supreme Court upon said testimony, which motion was denied, and on complaint of the defendant that the statement did not contain any rulings of that court on the admission or rejection of evidence, and especially with respect to the testimony of John B. Treadwell, and the exhibits filed therewith, the Supreme Court said: "The motion for an additional finding touching the admission of the deposition, map, and exhibits of John B. Treadwell has been considered. The appeal was taken by the United States. There being no cross appeal by the appellee, we decline to review the action of the court below, as that is not before us on this appeal, and overrule said motion and decline any action upon it for reasons stated."

Whatever may be thought of the reason given by the Supreme Court, the fact appears from this language that present action only was invoked, which was action after the decision; and, further, that such action was only in reference to a review of the ruling of the District Court. Indeed, not only is the silence of the record conclusive against any motion in the Supreme Court to exclude the testimony, or any action by that court in the way of exclusion, but also the fair inference, from all the matters presented by counsel, is that after the decision it was sought to get from the Supreme Court only some review of the ruling of the District Court on the motion to exclude the testimony. We cannot review the action of the District Court, and no action was taken by the Supreme Court prior to the decision. The appellant can, therefore, take nothing by this contention.

Again, it is insisted that upon the facts of the case the

appellant is entitled to a reversal. But clearly this is untenable. The statement of facts is plain, to the effect that the survey was inaccurate and obtained by fraud. The force of this is not obviated by the fact that Griffin, the surveyor, was not found to have been a party to the fraud. The wrong is the wrong of the patentee; and the fact, if it be a fact, that he did not secure the wrongful assistance of all the officers of the government connected with the survey, does not make his wrong any the less. It may be, as Chief Justice Long intimates, that Griffin, the surveyor, was innocent; that he was misled by the misrepresentations and fraudulent acts of others; but if it be, as found by this statement of facts, that the survey was erroneous, that it and the patent were obtained by fraud, and that the patentee was a party to such fraud, that is enough to sustain a decree setting aside the survey and the patent, and leaving the defendant to whatever rights may exist under the original confirmation.

Finally, it is insisted that the defendant was a *bona fide* purchaser; but the findings of fact do not warrant this conclusion. The president of the company, and a large stockholder, together with others interested, visited the property before the purchase. They were warned of the adverse claims. They examined the land and could easily perceive the situation of some of the points named in the description, and also the presence within the limits of the patent of this town of San Francisco. Indeed, it is distinctly stated in the findings that "the said defendant, through its said company, had notice, in fact, by the means aforesaid, of the adverse claim to said grant, and in addition thereto information sufficient to put it on inquiry as to the fraud alleged in the bill of complaint."

Undoubtedly, upon the facts as found and stated by the court, the defendant was not entitled to hold as a *bona fide* purchaser.

These are all the matters complained of, and in them finding no error, the decree of the Supreme Court of the Territory is

*Affirmed.*