## SALINA STOCK COMPANY *v.* SALINA CREEK IRRIGATION COMPANY.

### APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF UTAH.

No. 191. Submitted March 31, 1896. — Decided May 18, 1896.

Without denying its power to pass upon a judgment of the Supreme Court of a Territory on a question of practice, in an equity case, this court is not inclined to do so unless it can perceive that injustice has been done.

THE Salina Creek Irrigation Company, a corporation organized under the laws of the Territory of Utah for the purpose of controlling and regulating the waters of Salina Creek, in that Territory, and of furnishing and distributing the same to and among its stockholders, filed its complaint in the District Court of the First Judicial District of the said Territory on February 11, 1890, against the Salina Stock Company, a Utah corporation engaged in the business of stock raising upon a ranch in Sevier County, about twenty-two miles east of the town of Salina, in that county, and Elwin A. Ireland, alleging that the stockholders of the plaintiff company were owners in severalty of lands in the said county aggregating eighteen hundred and sixty-two acres, situated at or near Salina, which lands were valuable for agricultural purposes, but would not produce crops without irrigation; that the greater part of Salina Creek, which flowed in a westerly direction to Salina and to the said lands, was supplied by two branches known, respectively, as Yogo Creek and Neoche Creek; that for more than fifteen years prior to the commission of the injuries complained of, the plaintiff, its stock-

holders and grantors, had been diverting and appropriating, at and near Salina, all the waters of Salina Creek, (the same, as alleged, being otherwise unappropriated,) and had been using the same for domestic purposes and for irrigating their lands, and that for these uses all the water of said creek, when the flow thereof was uninterrupted, was necessary and not more than sufficient. It was averred that at frequent times within the six years next preceding the filing of the complaint the defendants, by means of dams and ditches by them constructed, diverted large quantities of the waters of Yogo and Neoche Creeks, and in the years 1888 and 1889 so diverted nearly all the waters thereof, and thereby greatly diminished the flow of water in Salina Creek; that these acts had been done without the consent of the plaintiff and greatly to the loss and damage of its stockholders, and that the defendants threatened to continue so to divert the said waters, and would so do, to the great and irreparable injury and loss of the plaintiff and its stockholders, unless restrained by injunction. The plaintiff asked, therefore, that the defendants be perpetually enjoined from diverting, appropriating or in any manner interfering with the waters of Yogo and Neoche Creeks.

The defendants filed their answers on March 27, 1890, averring therein that for more than ten years then last past they and their grantors had been entitled to the use, for agricultural, domestic and stock raising purposes, of all the waters of Yogo and Neoche Creeks, by virtue of actual diversion thereof and continuous appropriation of the same for the said purposes during the said period, and were so entitled at the time of the filing of their answer, and that neither the plaintiff company nor its stockholders had any rights with relation to the waters of the said two creeks. They asked for a decree quieting their title.

The court tried the case without a jury, and subsequently filed its finding of facts, which was as follows:

"That the said waters of Neoche and Yogo Creeks flow into and mingle with the waters of Salina Creek, in Sevier County, Utah, and flow down through the bed of said last mentioned creek to and past the lands of the stockholders

of said plaintiff corporation; that in and during the years 1871, 1872 and 1873 the said stockholders of the plaintiff corporation, their predecessors and grantors, diverted from the natural bed or channel of Salina Creek below the confluence of Yogo and Neoche Creeks with Salina Creek, and used and appropriated upon lands adjacent thereto, all the waters of said Salina Creek during the whole of the period from the 15th day of June until the 1st day of November of each and every year, and that during the period from the 1st day of November until the 1st day of April following the water was by said stockholders, their predecessors and grantors, used for domestic and culinary purposes and for the watering of stock, and that during the period from April 1 until June 15 only a small part of the waters of said creek were used. That all of said water was so, as aforesaid, diverted, used and appropriated for culinary, domestic and agricultural purposes, and was necessarily consumed in the households and in the watering of stock and upon agricultural crops. That the waters of said creeks have been continuously since said appropriation so made as aforesaid up to the time of the filing of the complaint herein and are now so diverted, used and appropriated.

"That during the months of April, May and one half of the month of June the waters of said Neoche and Yogo Creeks are high and the flow thereof is greater than is necessary for or than has been used or appropriated by plaintiff corporation or its stockholders, and that the waters of said creeks which were so unused and unappropriated by said plaintiff or its stockholders have been used and appropriated by defendants. That whatever rights in and to the waters of said creeks are owned or held by the said defendants, the same are secondary and servient to the rights of plaintiff.

"That before the commencement of this action the stockholders of plaintiff corporation by their several deeds in writing conveyed to plaintiff corporation all their several rights, titles and interests in and to the waters of Neoche and Yogo Creeks in trust, as hereinbefore stated, and the plaintiff corporation is now the legal owner and holder of said waters and of the rights therein and has the primary right to use control

and divert the same in the manner and to the extent as here-inbefore set forth."

The court also filed its conclusions of law, and these were embodied, in effect, in the following decree, entered February 14, 1891:

"It is ordered, adjudged and decreed that the plaintiff, Salina Creek Irrigation Company, is entitled to the use and appropriation of all the waters flowing, or to flow through, or in those certain creeks known as Yogo and Neoche Creeks, in Sevier County, Utah Territory, during the period from the 15th day of June to the 1st day of November in each and every year; that the said plaintiff is also entitled to the use and appropriation, for culinary and domestic purposes and for the purpose of watering animals, of so much of the waters of said creeks as it may need or require to use during the period from the 1st day of November to the 1st day of April following of each and every year, and that it is entitled to the use and appropriation, for culinary and domestic use, and for the watering of stock and for agricultural purposes, of water from said creeks during the period from April 1st to the 15th of June of each and every year, and that during the last named period the said defendants are also entitled to the use of a portion of the waters of said creek; and it is further ordered, adjudged and decreed that the said defendants, Salina Stock Company and E. A. Ireland, and each of them, and their and each of their servants, agents and employés, be, and they are hereby, perpetually enjoined and forbidden from in any manner using or diverting any of the waters of said Yogo and Neoche Creeks during the period from the 15th day of June until the 1st day of November in each and every year, so as in any manner or to any extent to injure the quality or lessen the flow of said streams or either of them into Salina Creek; and said defendants and each of them are further restrained and enjoined from in any manner diverting, using or appropriating the waters of said creeks during the period from the 1st day of November until the 1st day of April following of each and every year so as in any manner to deprive the said plaintiff corporation or its stockholders of the use of sufficient

of the waters of said creeks for culinary and domestic purposes, and for the watering of stock.   And said defendants and each of them are further perpetually restrained and enjoined from in any manner using the waters of said creeks or either of them during any portion of the year or at all so as in any manner to lessen, injure or deteriorate the natural quality thereof."

The defendants moved for a new trial, and their motion having been overruled, they appealed to the Supreme Court of the said Territory, assigning as error, among other things, that there was no evidence to justify the finding and decree of the trial court, and that the decree was so uncertain that the rights of neither of the parties could be ascertained under it.

The said Supreme Court heard and decided the case, and on September 12, 1892, filed its opinion therein, which, after discussing the evidence as it appeared in the defendants' statement on motion for a new trial, observed that it was shown thereby that in the year 1878 the defendants or their grantors diverted a portion of the waters of Yogo and Neoche Creeks several miles above Salina, and continued such diversion during the spring, summer and fall of each year up to the time this action was commenced, for stock raising and culinary purposes, and for the purpose of irrigating land on those tributaries; that those two streams furnished about one third of the waters of Salina Creek, and emptied into it above the land irrigated by the plaintiff; that although a number of the grantors of the plaintiff company were residents of Salina and appropriators of water from Salina Creek prior to the time of the appropriation by the defendants' grantors of the waters of Yogo and Neoche Creeks, no specific rights with relation to the waters of Salina Creek existed in all the grantors of the plaintiff prior to the time when the defendants or their grantors appropriated water from Yogo and Neoche Creeks; that the plaintiff's grantors did not make appropriation of all the waters of Salina Creek prior to the time when the defendants' grantors appropriated nearly all the waters of Yogo and Neoche Creeks in 1878.   The opinion then proceeded as follows:

" Without entering into a discussion of the other questions presented by the record, we are satisfied from the facts shown that the appellants [defendants] are entitled to the use of more water than is awarded them in the decree of the court below and that said decree as well as the findings of fact should be modified and made more certain so as to settle the whole controversy between the parties; settle it so that it may be ascertained with reasonable certainty how much the court has decreed in favor of either party without a resort to further proceedings. This should be done upon the proofs taken in the case without the necessity of awarding a new trial. The respondent [plaintiff] should be entitled to the use and appropriation of all the waters flowing or to flow through or in Yogo and Neoche Creeks during the period from and including the fifteenth day of June to the first day of November in each year, except that during twenty-four hours of Monday of each week during that period the appellants should have the exclusive use of one half of the waters flowing through Yogo Creek, and that during twenty-four hours of Friday of each week during that period the appellants should have the exclusive use of one half of the water flowing through Neoche Creek for farming, grazing, stock raising and culinary purposes, and that during all such period the appellants should also have the right to use the waters of both such creeks as may be necessary for watering stock and for culinary purposes only, and that from and including the first day of November to the fifteenth day of June in each and every year the said respondent should be entitled to the use and appropriation of such waters of Yogo and Neoche Creeks as it may need for culinary and domestic purposes and for watering stock and agricultural purposes, not exceeding one half of the waters flowing through such creeks, and that during the same period last stated the appellants shall be entitled to use and appropriate such waters of Yogo and Neoche Creeks as it may need for the same purpose, not exceeding one half of the waters flowing through such creeks, and each party should be enjoined from interfering with the rights of the other under such decree."

The court entered a judgment remanding the case to the

said District Court with directions to modify the decree and findings therein in conformity with the foregoing opinion.

The Salina Stock Company and Elwin A. Ireland (defendants in the District Court and appellants in the said Supreme Court) thereupon appealed to this court, alleging that the said Supreme Court erred in vacating the findings of the District Court, and rendering judgment on the evidence taken at the trial below.

*Mr. C. W. Bennett* for appellant.

*Mr. J. L. Rawlins* for appellee.

Mr. Justice Shiras, after stating the case, delivered the opinion of the court.

The single question presented in this record is the regularity of the action of the Supreme Court of the Territory of Utah in rendering judgment as follows:

"This cause having been heretofore argued and submitted, and the court being sufficiently advised thereon, it is now here considered, ordered and adjudged that the judgment of the District Court therein be and the same is hereby modified, and this cause is remanded back to said District Court, with directions to modify the decree and findings therein in conformity with the opinion of this court."

That portion of the opinion of the Supreme Court which was particularly directed to a modification of the decree of the District Court was in the following terms:

"Without entering into a discussion of the other questions presented by the record, we are satisfied from the facts shown that the appellants are entitled to the use of more water than is awarded them in the decree of the court below, and that the decree of the court below, as well as the findings of facts, should be modified and made more certain, so as to settle the whole controversy between the parties; settle it so that it may be ascertained with reasonable certainty how much the court has decreed in favor of either party, without a resort to further proceedings. This should be done upon the proofs

taken in the case without the necessity of awarding a new trial."

Whether this decree was so far final as to be the subject of an appeal to this court might be questionable. But neither of the parties have suggested such a question, and we shall assume that, reading the decree in the light of the opinion, it may be regarded, if unreversed, as a final disposition of the controversy.

We are therefore asked to reverse a final decree of the Supreme Court of the Territory of Utah, in an equity case, on a question of practice. The act of April 7, 1874, c. 80, 18 Stat. 27, provides that, on appeal from a territorial court, instead of the evidence at large, a statement of the facts of the case in the nature of a special verdict, and also the rulings of the court on the admission or rejection of evidence when excepted to, shall be made and certified by the court below, and transmitted to the Supreme Court, together with the transcript of the proceedings and judgment or decree. No such statement is given us in this record, nor are any of the rulings of the trial court, in the admission or rejection of evidence, complained of. But the sole contention is that it was not competent for the Supreme Court to modify the findings of fact of the court below and enter a judgment on the facts as thus modified — that, if dissatisfied with the findings, the Supreme Court should have sent the cause back for a new trial. Several California cases are cited, in which it was held that when the findings are erroneous it is not the province of the Supreme Court, on appeal, to look into the evidence with a view to reform the findings, and then to enter a judgment in accordance with what the findings ought to have been, but that, in such a case, the Supreme Court will reverse the judgment and remand the cause for a new trial.

While it is true that the Code of Civil Procedure of California is in similar terms to that of Utah, it does not follow that the courts of the latter will be regulated by decisions of California courts in construing the provisions of the code.

Section 3006, vol. 2, Compiled Laws, embraced in the Utah Code of Civil Procedure, is as follows : " The court may re-

verse, affirm or modify any order or judgment appealed from, and may direct the proper judgment or order to be entered, or direct a new trial, or further proceedings to be had."

In the case before us the Supreme Court of Utah has practically interpreted the provision as authorizing it to modify the findings of the court below, and to make a corresponding change in the judgment, without awarding a new trial. Those modifications of the findings and judgment were favorable to the defendants in the trial court, who took the appeal to the Supreme Court of the Territory. Yet they are the parties who have appealed to us to say that, instead of amending the decree in the manner it did, the court should have reversed the judgment, and directed a new trial.

A somewhat similar question was raised in the case of *Stringfellow* v. *Cain*, 99 U. S. 610, which was likewise an appeal from the Supreme Court of Utah. There the Supreme Court of the Territory set aside the findings of the trial court, and directed a decree on the evidence, at the same time making its own findings from the evidence; and this court refused to disturb the decree of the Supreme Court, saying: "Without undertaking to decide what would be the proper practice in an ordinary civil case when the judgment is reversed, and a new trial was refused in the District Court, we are clearly of the opinion that in a suit like this, when all the evidence is before the Supreme Court that could be considered by the District Court if the case should be sent back, it is proper for the Supreme Court itself to state the facts established by the evidence, and render the judgment which ought to have been rendered by the District Court."

*Gray* v. *Howe*, 108 U. S. 12, was likewise an appeal from the Supreme Court of the Territory of Utah. There the Supreme Court on appeal had reversed the judgment of a District Court, set aside the findings of that court, and without itself making a new statement of facts in the nature of a special verdict entered a final judgment; and this court held that such record presented nothing for our examination, and that consequently the judgment of the Supreme Court of the Territory must be affirmed on appeal.

It has been frequently held that the authority of this court on appeal from the Supreme Court of a Territory is limited to determining whether the court's findings of fact support its judgment or decree, and whether there is any error in rulings duly excepted to in the admission or rejection of evidence. *San Pedro Company* v. *United States,* 146 U. S. 120; *Mammoth Mining Co.* v. *Salt Lake Machine Co.,* 151 U. S. 447, 450; *Idaho & Oregon Land Co.* v. *Bradbury,* 132 U. S. 509, 514; *Haws* v. *Victoria Copper Mining Co.,* 160 U. S. 303, 312. Without denying the authority of this court to find error in the judgment of the Supreme Court of a Territory, even in passing on a question of practice, we certainly should not feel inclined to exercise such authority unless we were able to perceive that injustice had been done; and as this record presents us with no statement of the facts to enable us to determine whether the facts found were sufficient to sustain the judgment rendered, and with no exceptions taken to rulings in the admission or rejection of evidence, there is nothing here which we can examine. It follows that the judgment of the Supreme Court of the Territory of Utah must be and is

*Affirmed.*