## UNITED STATES v. LECCONY SMOKELESS FUEL CO.

### Civ. A. No. 473.

District Court, S. D. West Virginia.

Jan. 25, 1946.

L. E. Given, U. S. Atty., of Charleston, W Va., for plaintiff.

Ashworth & Sanders, of Beckley, W. Va., for defendant.

MOORE, District Judge.

Leccony Smokeless Coal Company was adjudged insolvent in December, 1938, and placed in receivership. It owed taxes to the United States, which, by the 23d day of August, 1939, amounted, according to the government's claim, to approximately $30,-000.

The Circuit Court of Raleigh County, West Virginia, which had appointed receivers on March 7, 1939, referred the matter to a commissioner in chancery for an accounting. The commissioner reported to the Court concerning priority of liens on May 18, 1939, in which report he listed the lien of the United States for taxes as sixth in order of priority, which made it subordinate to various other claims, including a $200,000 bond issue and all judgments and executions. The amount of the government's lien for taxes was reported by the commissioner in chancery as being $19,607.44, together with penalty and interest in the amount of $4,160.72. Exceptions were filed by certain of the lienors, not including the United States, but these exceptions were overruled and an order was entered by the Circuit Court on May 18, 1939, directing sale of the property to satisfy the liens in accordance with the commissioner's report. Sale was made on June 1, 1939, at which sale Piney Coking Coal Land Company bid in all the property and assets for the sum of $37,500.

On June 3, 1939, prior to the confirmation of the sale, the United States moved the Circuit Court to recommit the report of the commissioner in chancery and set aside the decree confirming the report. This motion the Court took time to consider.

Later Leccony Smokeless Fuel Company, the defendant in this case, negotiated with Piney Coking Coal Land Company with a view to taking over its bid of $37,-500 for the property and assets of Leccony Smokeless Coal Company. In order to further these negotiations defendant undertook to agree, and did agree, with the United States upon a settlement of the latter's claim for taxes against Leccony Smokeless Coal Company. The agreement provided that the United States would accept the sum of $6,500 payable in installments in discharge of its claim for taxes up to the date receivership proceedings were begun. The

compromise settlement, which was approved by the Circuit Court of Raleigh County on August 23, 1939, contained the following provision: "The present offer does not constitute a settlement of any Federal taxes due from said Leccony Smokeless Fuel Company, or the receiver thereof for periods subsequent to the inception of said receivership proceedings, and the United States shall retain all rights to enforce and collect any such tax liabilities; but the payments to be made by the undersigned as hereinafter set out (beginning with the last of such payments) shall be reduced by a sum equal to any amount collected by the United States in said receivership proceedings in respect to such federal tax and liability for periods during the receivership proceedings."

The United States, on the same day the settlement was approved by the Circuit Court of Raleigh County, withdrew the motion made by it on June 3, 1939, to recommit the report of the commissioner in chancery and set aside the decree of confirmation thereof.

The defendant paid $4,214.17 of the amount agreed upon in settlement of the tax claim, leaving a balance due the United States of $2,285.83.

It is stated in defendant's brief filed with the Court in resistance to the motion for judgment on the pleadings, that to May 10, 1941, further federal taxes had accrued against Leccony Smokeless Coal Company in the amount of $2,441.61, all of which related to the period of the receivership; that on that date defendant filed a petition with the Circuit Court seeking to be subrogated to the claim of the United States for taxes in the amount of $4,214.17, the amount already paid by defendant on the settlement with the United States, and also setting up a claim on behalf of the United States to the sum of $2,441.61, the taxes accrued during the receivership; that again the case was referred to a commissioner in chancery, and that on August 8, 1941, pursuant to a report of the commissioner, a final decree was entered wherein the two sums of $4,214.17 and $2,441.61 were given third priority in the disbursement of the funds in the hands of the receivers, next after the costs of the suit and expenses incurred for protecting the property during receivership.

It is further stated in defendant's brief that, on appeal by Piney Coking Coal Land Company from the last-mentioned decree, the Supreme Court of Appeals of West Virginia reversed the decree insofar as it affected the claim of the United States for taxes, holding that the decree of August 23, 1939, not appealed from by the United States, was conclusive as to the priority of such claim, and that there could be no recovery for federal taxes incurred during the receivership in the order of priority allowed by the Circuit Court in its decree of August 8, 1941, because the United States had failed to assert its right to these taxes.

These statements in defendant's brief go far beyond the allegations contained in the answer; but they are here recited because I assume that defendant would, if permitted, introduce evidence of the facts covered by these statements in support of the general allegations in the answer.

It is urged by the defendant that because the United States withdrew its motion to set aside the decree of May 18, 1939, and thereafter did no further act in challenging the order of priorities set forth in the first commissioner's report whereby its claim for taxes was subordinated to other large indebtedness, and filed no claim for the taxes accruing during the receivership, it is therefore estopped to recover anything in the present suit. The contention is, further, that the United States, having agreed in the settlement to reduce defendant's liability to it by any amounts collected for taxes accruing during the receivership, became obligated to take all necessary steps to collect such taxes and apply the amounts collected on defendant's liability to the United States.

■ The equitable principle of estoppel does not apply to the United States. As was said by Judge Parker in the case of United States v. City of Greenville, 4 Cir., 118 F.2d 963, 966, "Rights of the government are not affected by laches of its officers and [the government] is not estopped by their conduct from asserting its rights." See, also, United States v. Kirkpatrick, 9 Wheat. 720, 6 L.Ed. 199; Hart v. United States, 95 U.S. 316, 24 L.Ed. 479; San Pedro & Canon del Agua Co. v. United States, 146 U.S. 120, 13 S.Ct. 94, 36 L.Ed. 911; Jones v. United States, 18 Wall. 662, 21 L.Ed. 867; United States v. Dallas Military Road, 140 U.S. 599, 11 S.Ct. 988, 35 L.Ed. 560; Gaussen v. United States, 97 U.S. 584, 24 L.Ed. 1009; Chesapeake & Delaware Canal Co. v. United States, 250 U.S. 123, 39 S.Ct. 407, 63 L.Ed. 889; Cooke

v. United States, 91 U.S. 389, 23 L.Ed. 237; Dox v. United States Postmaster-General, 1 Pet. 318, 7 L.Ed. 160.

Defendant concedes in its brief that ordinarily there is no estoppel as against the government; but it argues that the government may be a loser by the negligence of its officers, and that since, as defendant contends, it was the duty of the government to take all necessary steps for collection of the taxes accruing during the receivership, the government, by failure of its agents to press their exceptions to the decree of May 18, 1939, fixing priorities, or to make claim for the taxes accruing during receivership, is not entitled now to collect from the defendant a sum which would have been offset had the government succeeded in collecting those taxes.

I can see in this argument little beyond the proposition conceded by all and established by the decision of the Supreme Court of Appeals of West Virginia that by reason of its having withdrawn its exceptions to the decree of May 18, 1939, the government was bound by that decree and could not take advantage of the later decree fixing a different order of priorities. It does not follow from this that the government may not collect under the compromise settlement agreement. The doctrine of estoppel cannot be invoked as a defense to its rights under that agreement, which imposed no obligation on the government to collect the taxes accruing during the receivership, but merely provided in effect that whatever taxes might be collected for that period should be applied to the credit of defendant against the $6,500 settlement. Moreover, it is apparent from the pleadings and exhibits that the government's withdrawal of its exceptions to the decree of May 18, 1939, was made as a part of the understanding between the parties, and in furtherance of the settlement. The evident purpose was that defendant could then proceed to exercise its rights under the assignment from Piney Coking Coal Land Company, procure confirmation of the sale, and proceed with the operation of the coal mining property. Defendant will not be allowed to take advantage here of a situation which it participated in bringing about for its own benefit.

As to the point raised by the government that defendant is attempting to make a collateral attack upon the judgment of the Circuit Court of Raleigh County, West Virginia, I question whether this point is of any materiality; but since judgment must go against the defendant on the grounds already set forth, I do not deem it necessary further to consider it.

Plaintiff's motion for judgment on the pleadings is therefore granted and an order may be prepared for entry in accordance with this opinion.