Simeon SHARAF, Petitioner,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

No. 4958.

United States Court of Appeals
First Circuit.

July 15, 1955.

Stanley M. Brown, Manchester, N. H., with whom McLane, Carleton, Graf, Greene & Brown, Manchester, N. H., was on brief, for petitioner.

David O. Walter, Sp. Asst. to Atty. Gen., with whom H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack, Sp. Asst. to Atty. Gen., were on brief, for respondent.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a decision of the Tax Court of the United States filed December 22, 1954, which determined a deficiency in the individual income tax of Simeon Sharaf for the taxable year 1945 in the amount of $5,196.76 and imposed as an addition thereto a negligence penalty in the amount of $259.84.

This deficiency arises out of income found to have been received by the petitioner in 1945 as a consequence of the liquidation of petitioner's solely owned corporation, Merrimack Loan Company, Inc. (hereinafter called Merrimack). The Tax Court found that the cost basis of petitioner's stock in Merrimack was $15,000. It also found that upon the liquidation of Merrimack petitioner received cash in the amount of $401.07, accounts receivable of $8,075.50, and 19 parcels of real estate having an aggregate market value of $43,312.50. The sole issue in this case is whether 13 parcels of this real estate with a market value of about $26,875, the legal title to which was in the petitioner individually and not in Merrimack, were assets of Merrimack received by the petitioner as a result of the liquidation. Petitioner admits that the other five parcels were owned by Merrimack and their value was properly includible in his 1945 income.[1]

The Tax Court found that petitioner had been formerly in the tailoring busi-

---

1. It was admitted by the Commissioner during argument that one of the 19 parcels had been purchased by petitioner in 1945 following the liquidation of Merri-mack and thus could not have been received by the petitioner through the liquidation of Merrimack.

ness but had also dealt in New Hampshire real estate since 1920. Merrimack was incorporated on May 3, 1926 and in that same year acquired a small loan license from the State of New Hampshire. However, at least until 1933 petitioner, as an individual, continued to loan money in amounts over $300 because the New Hampshire statute provided that no person should owe any small loan licensee at any time more than $300 for principal. From 1933 to 1945 it appears that most of the money lending business was carried out through Merrimack and during that period petitioner's only bank account was in the name of the corporation. In 1948 when he moved to smaller quarters, petitioner, who was then 71 years old and retired from active business, destroyed most of his business records for the years prior to 1940.

The Commissioner of Internal Revenue's notice of deficiency to the petitioner, dated March 11, 1952, was based on a field audit which stated that Merrimack as of January 31, 1945 possessed real estate valued at $43,312.50. No reason was given for the inclusion of petitioner's individually owned real estate as an asset of Merrimack.

Petitioner in the trial before the Tax Court offered uncontradicted oral and documentary evidence that the title to the 13 parcels in question had been in petitioner personally since their purchase and never in Merrimack. Petitioner further proved that at leat four of these parcels had been financed by means of mortgages from petitioner personally. The Commissioner conceded that the legal title of the parcels in dispute was in the petitioner's name but contended that

such property had been purchased with corporate funds and consequently had been an asset of Merrimack prior to the liquidation in 1945. The Tax Court agreed with this contention stating:

"That legal title to the property in controversy was in petitioner or that petitioner individually assumed legal liability when mortgage financing was involved, does not prove from whence came the funds used to pay for the property or to pay off the mortgage. Nor does the fact that the property may have been listed on the local taxing rolls as being taxed to petitioner prove that such taxes were actually paid out of petitioner's individual funds. Petitioner maintained no separate bank account from that of Merrimack, and it further appears that he took no great pains to distinguish between himself and the corporate entity in the acquisition and maintenance of property. For aught the record shows, all such property may very well have been, and probably was, purchased with corporate funds, as determined by respondent. At least, petitioner has failed to prove otherwise."

Petitioner bases this appeal on three grounds. The first is that a capital gain could not have been realized in 1945 by the petitioner through the liquidation of Merrimack, as "gain", under § 115(c) of the Internal Revenue Code [2] can only follow from "the sale or other disposition of property"[3] and Merrimack could not transfer or otherwise dispose of these disputed parcels in 1945, because it did not own them. Petitioner's second

---

2. 26 U.S.C. § 115(c).

"Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112."

3. 26 U.S.C. § 111.

"The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113(b) for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized."

ground is that the Tax Court erred in ruling that the Commissioner's determination, to which a presumption of correctness attaches, although unsupported by evidence, prevailed over petitioner's direct testimonial evidence corroborated by documentary evidence that was contrary to such determination. The petitioner's third ground is that the Tax Court was clearly in error when it found that the disputed real estate had been purchased with the corporate funds of Merrimack.

■ It is unnecessary for us to deal with the first of petitioner's points as it is our opinion that the Tax Court was clearly in error in upholding the Commissioner's determination in the face of the evidence presented by the petitioner and the complete lack of convincing evidence presented by the Commissioner. It is undoubtedly true that presumably the Commissioner's determination of deficiency is correct, and therefore the burden of proof in upsetting such determination rests on the taxpayer. Old Mission Portland Cement Co. v. Helvering, 1934, 293 U.S. 289, 55 S.Ct. 158, 79 L. Ed. 367, Welch v. Helvering, 1933, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212. However, if the record does not reveal any facts from which the Commissioner's determination could be inferred, the Tax Court is without authority to uphold such determination in the face of contrary and uncontradicted evidence. See Howell Turpentine Co. v. Commissioner of Internal Revenue, 5 Cir., 1947, 162 F. 2d 319, 326, Judge Hutcheson's concurring opinion.

■ In the instant case the presumption of correctness attributed to the Commissioner's determination was overcome by both petitioner's presentation of deeds and mortgages relating to the real estate in question and his own oral testimony. This evidence unless contradicted compelled the inference that Merrimack did not transfer the disputed parcels to petitioner in 1945.

No evidence was presented by the Commissioner from which it could be reasonably inferred that the real estate in question was purchased with corporate funds or that petitioner regarded it as belonging to the corporation.[4]

In addition to the introduction of the deeds and mortgages relating to the disputed parcels of real estate, petitioner testified that the property was purchased with his wages, presumably paid to him by Merrimack, accumulated money, and paid off loans which had been made by him as an individual. Petitioner further testified that he thought he reported the rent from these properties on his individual income tax returns although he later stated he could not remember without looking at the "certificates". This evidence was not contradicted nor was any attempt made by the Commissioner to show through petitioner's income tax returns whether or not petitioner included the rent from these parcels as income to him or to Merrimack, whether the expenses of these corporations were deducted by him or Merrimack, or whether these returns showed sufficient income to enable petitioner to purchase this real estate through his individual income rather than through Merrimack's corporate income. It is to be noted that while the value of the disputed real estate in 1945 was about $26,875, petitioner maintains that the total initial cash outlay for this real estate, which was purchased from 1936 to 1940, was not more than $6,800 with an additional amount of about $13,940 being obtained through mortgages. Petitioner produced evidence tending to show that amount could have been obtained through petitioner's

4. Commissioner unsuccessfully sought by cross-examination to establish that petitioner had filed a report with the State of New Hampshire in which it was stated that Merrimack possessed real estate valued at $45,000. The alleged report, which the Commissioner admits was never introduced in evidence, has been included in the Commissioner's brief before this court but cannot be considered by us. See San Pedro & Canon del Agua Co. v. United States, 1892, 146 U.S. 120, 132, 13 S.Ct. 94; 36 L.Ed. 911.

resources accumulated prior to 1926 or through earnings made through petitioner's loan operations as an individual prior to 1933.

The Tax Court was clearly erroneous in finding from the evidence before it that the petitioner had not overcome the presumptive correctness of the Commissioner's determination.

The decision of the Tax Court is reversed.