**Charles W. STEADMAN and Dorothy F. Steadman, Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

**No. 19486.**

United States Court of Appeals, Sixth Circuit.

April 10, 1970.

Michael H. Singer, Department of Justice, Washington, D. C., Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, Attys., Department of Justice, Washington, D. C., on the brief, for appellant.

William F. Snyder, Cleveland, Ohio, Marshman, Snyder & Seeley, Cleveland, Ohio, on the brief, for appellees.

1

Before PHILLIPS, Chief Judge, CELEBREZZE, Circuit Judge, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

This is an appeal by the Commissioner of Internal Revenue from a decision of the Tax Court reported as Charles W. Steadman, 50 T.C. 369 (1968). Therein the Tax Court held valid the taxpayers' claim of an ordinary loss deduction for the year 1962, in the amount of $80,000, being taxpayers' purchase price for shares of corporate stock which became worthless in the year 1962. The Commissioner contends here, as he did in the Tax Court, first that the loss did not occur in the year 1962; and second, that the loss was a capital loss which could not be deducted from ordinary income as a business loss. The Tax Court ruled against the Commissioner on both contentions. Five dissenters, however, held that the loss did not occur in the year 1962, but did not rule upon the Commissioner's second contention. They said:

"In view of the conclusion [that the loss did not occur in 1962] there is no need to consider whether petitioner sustained his burden of proof that the loss was a business loss * * *."

We affirm.

Charles Steadman was a partner in a Cleveland law firm. His practice was primarily in the field of corporate finance and organization. In the spring of 1960, one Paul E. Richards contacted Steadman with regard to a plan for the acquisition and amalgamation of several musical instrument companies into a single, integrated manufacturing and marketing organization. Richards offered Steadman the position of general counsel and assured him that he would remain general counsel of the proposed corporation so long as Richards retained control of its management. Based on the nature of the proposed organization, and the prospect of many acquisitions and mergers, generating substantial legal fees, Steadman estimated that something over $30,000 per year in legal fees would accrue to him as general counsel. Under Steadman's partnership agreement with his law firm, all of these fees, less a percentage to cover the overhead expenses of the law firm, would go to Steadman.

The establishment of the contemplated corporation was carried out as set forth in the Tax Court opinion, as follows:

"Petitioner accepted Paul Richard's offer and, as a first step in executing the plan, organized the Richards Music Corp. (herein referred to as Richards Music) as the principal corporate entity. Then, on December 30, 1960, the Blessing Band Instrument Co. was merged into Richards Music, and the stock of the Martin Band Instrument Co. and the assets of the Reynolds Band Instruments Co. were acquired by Richards Music. The resulting entity became operational at this time with petitioner as its secretary, general counsel, and member of the board of directors. In early 1962, the name of Richards Music Corp. was changed to Richards Musical Instruments, Inc.

"To finance the merger and acquisition, Richards Music borrowed $750,000 from American Research & Development Corp. of Boston, Mass. (herein referred to as American Research), in exchange for 6-percent convertible subordinate debentures, which were convertible into common stock of Richards Music at $3 per share.

"Immediately following the merger and acquisitions, the board of directors of Richards Music consisted of nine members, five (including petitioner) representing the shareholders, three representing American Research, and one representing Wurlitzer Co. which had acquired notes and debentures of Richards Music in return for the stock of the Martin Band Instrument Co."

The validity of Steadman's estimate of the yearly earnings that would come to him as general counsel for the newly formed corporation is not challenged; neither is the value of the service performed by Steadman and an associate during the years 1961 through 1964

questioned. Such value exceeded $30,-000 in each year. Because of the company's financial problems, the actual payments to Steadman totalled $47,036.-58 for these four years, as against the total value of the service of $144,615.50.

By the summer of 1961, it became apparent that further financing was critically necessary to complete plans for further acquisitions. American Research & Development Corp. which was already the holder of $750,000 face value of Richards Musical Instruments, Inc. convertible debentures, offered to provide additional financing by purchasing newly issued shares in the amount of $350,000, conditioned upon an increase in the number of directors to ten, five to be selected by the debenture holders. Implicit in this offer was a bid by American Research for control of Richards Music. American Research made it clear that such control would be followed by a change in management and the concentration of legal activities in the Boston law firm handling the business of American Research. Steadman was thereby made aware that acceptance of the American Research offer and plan would likely cause him to lose his position and income as general counsel of Richards Music. To maintain his position, it was imperative that some other financing arrangement be secured. In response to American Research's offer, the Board of Richards Music passed a resolution authorizing the issuance of 140,000 new shares of capital stock in the amount of $350,000, but to be offered first to the shareholders of record, at $2.50 per share. Steadman was already the owner of 12,000 shares of Richards Music which he had earlier purchased. These shares are not here involved. The shareholders of record, other than Steadman, were willing to purchase only 70,000 shares. Through a New York brokerage house, Steadman arranged the purchase of the remaining 70,000 shares, 32,000 held for his own account and financed by a Cleveland bank's loan to Steadman. Steadman's loss of $80,000 when the shares he purchased for that amount became worthless is the subject matter of this litigation.

Subsequent to this purchase, Richards Music suffered business losses, the extent of which were not revealed fully until an external audit by Ernst & Ernst, covering the calendar year 1962, was furnished on March 27, 1963. This external audit revealed a net deficit in shareholder's equity of $456,109.19, a net operating loss of over $1.3 million, and an excess of current liabilities over current assets of over $100,000. These figures supported the fears of the Board, aroused in December of 1962, that the management of Richards Music had been presenting the Board with false figures and that Richards Music was, in reality, in dire financial straits. The Board met in January of 1963, replaced Paul Richards as president and began consideration of what could then be done with Richards Music. Business operations continued through 1963, but the Ernst & Ernst audit for that year confirmed the fact that Richards Music had no prospect for continued existence. On April 15, 1964, a Chapter XI bankruptcy proceeding was filed in federal district court. Steadman's shares had become, and remained, worthless.

We consider the questions presented in this order:

*1. The year of loss.*

The Tax Court held that Steadman's $80,000 loss occurred in the year 1962. The Commissioner contends that it occurred in 1963. Resolution of such contest involves a finding of fact. The Tax Court found as a matter of fact that the loss occurred in 1962. Unless we can say that such finding was clearly erroneous, we are not at liberty to set it aside. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 289, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). The Commissioner's brief to this Court states the rule as follows:

"The cases in this area are consistent with the Regulations; they have consistently held that when stock or secu-

rities become worthless is a question of fact to be determined from an examination of all the facts and circumstances of the case. It is generally agreed that no single factor is determinative of the issue (Boehm v. Commissioner of Internal Revenue, 326 U. S. 287, 66 S.Ct. 120, 90 L.Ed. 78 (1945)), and it is equally well-settled that the burden of establishing worthlessness, as well as the year of its occurrence, is on the taxpayer (Lincoln Bank & Trust Co. v. Commissioner of Internal Revenue 51 F.2d 78 (C.A. 6th, 1931))."

The Tax Court determined that the capital stock of Richards Music was worthless as of December 31, 1962. This finding was based upon the authoritative balance sheet prepared by Ernst & Ernst covering the year 1962 and revealing a huge net operating loss, and the net deficit in the shareholders' equity.[1] The Tax Court also noted that in appraising the $100,000 deficit in current assets over current liabilities, account should be taken of the fact that a relatively large amount of the current assets consisted of unfinished goods in inventory. We do not consider that the Commissioner contends otherwise than that Richards Music was in fact insolvent as of December 31, 1962. We read his position to be that those controlling the corporation in 1963 were not without hope that implementation of plans then conceived would restore some worth to its shareholders' equity. These plans were not carried out, and as they are set out in detail in the Tax Court opinion, we will not detail them here. The Tax Court's view was that the plans of 1963 had for their primary objective the salvaging of something for the company's creditors. It recognized the need, generally, that there must be a showing of an "identifiable event" which would con-

firm the time of the loss. Disposing of this question, the Court quoted this language from its decision in Sterling Morton, 38 B.T.A. 1270 (1938):

"There are, however, exceptional cases where the liabilities of a corporation are so greatly in excess of its assets and the nature of the assets and business is such that there is no reasonable hope and expectation that a continuation of the business will result in any profit to its stockholders. In such cases the stock, obviously, has no liquidating value, and since the limits of the corporation's future are fixed, the stock, likewise, can presently be said to have no potential value. Where both these factors are established, the occurrence in a later year of an 'identifiable event' in the corporation's life, such as liquidation or receivership, will not, therefore, determine the worthlessness of the stock, for already 'its value has become finally extinct.'" 38 B.T.A. at 1279.

The Tax Court's critical holding was that after 1962 "there was no reasonable expectation of future profit to the shareholders of Richards Music, and that a prudent business man would have ascertained the stock was worthless." The Commissioner here cites this Court's opinion in Deeds v. Commissioner of Internal Revenue, 47 F.2d 695 (6th Cir. 1931). It will be sufficient to say that there we affirmed the Board's finding of fact and in Morton v. Commissioner of Internal Revenue, 112 F.2d 320, the Seventh Circuit affirmed the findings of fact by the B.T.A., saying:

"The worthlessness of a stock as of a particular year is a question of fact, requiring practical consideration of all the facts and circumstances, and each case must stand on its own facts, St. Louis Union Trust Co. v. United States, 8 Cir., 82 F.2d 61, 66; Forbes

---

1. The Tax Court's opinion recites:
   "An external audit, dated March 27, 1963, prepared by Ernst and Ernst as of December 31, 1962, revealed a net loss in the year 1962 of $1,344,434.09, an excess of current liabilities over current assets of $100,908.23, and a net deficit in the shareholders' equity of $456,109.19. Of the $3,595,735.92 in current assets, $594,979.90 represented unfinished inventory and $49,668.49 consisted of cash."

v. Commissioner [of Internal Revenue], 4 Cir., 62 F.2d 571; and Industrial Rayon Corp. v. Commissioner [of Internal Revenue], 6 Cir., 94 F.2d 383. We, of course, are bound by the rule that where there is substantial evidence to support the Board's finding upon a question of fact, its decision of such a question is conclusive upon review, and the conclusions must be accepted. Helvering v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343; Palmer v. Commissioner [of Internal Revenue], 302 U.S. 63, 58 S.Ct. 67, 82 L.Ed. 50; Helvering v. National Grocery Co., 304 U.S. 282, 294, 58 S.Ct. 932, 82 L.Ed. 1346; Sacks v. Commissioner [of Internal Revenue], 4 Cir., 66 F.2d 308; and Jones v. Commissioner [of Internal Revenue], 9 Cir., 103 F.2d 681, 684." 112 F.2d at 321.

■ We hold that substantial evidence supported the Tax Court's finding. It was not clearly erroneous.

*2. Was the loss deductible from ordinary income.*

Our earlier factual recital sets out the emergency that prompted Steadman to borrow $80,000 to purchase the 32,000 shares of Richards Music. He had already owned 12,000 shares as a capital investment, the loss of which is not claimed here. The only reasonable view that can be taken of Steadman's borrowing of $80,000 to acquire the shares here involved is that he did so to protect his position as general counsel for Richards Music and the earnings necessarily flowing from such position. Such was the holding of the Tax Court. The Commissioner recognized this in his statement to us that,

"The taxpayer here, an attorney, purchased stock in a client corporation, not with the expectation of dividends or capital growth, but in order to retain the corporation as a client affording substantial fees for legal services."

Admittedly, if the company's 1961 needs had been financed by sale of new stock to American Research, holder of debentures, control of management would have gone to that concern and the legal work would have been transferred to a Boston law firm. In holding that Steadman's 32,000 shares of Richards Music was not a capital asset, the loss of which could only be charged against capital gains, the Tax Court said:

"Whether an asset normally considered capital in nature is an integral part of a taxpayer's business so as to render a loss suffered with respect to it deductible as an ordinary loss is essentially a fact question. In making this determination, it must be borne in mind that the definition of a capital asset must be narrowly applied and its exclusions interpreted broadly so as to effectuate the basic congressional purpose. Corn Products Co. v. Commissioner of Internal Revenue, 350 U.S. 46 [76 S.Ct. 20, 100 L.Ed. 29] (1955)." 50 T.C. at 379.

The question now before us has been presented in a variety of factual situations. In Corn Products Refining Co. v. Commissioner of Internal Revenue, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29 (1955), the Supreme Court was dealing in "corn futures". In Booth Newspapers, Inc. v. United States, 303 F.2d 916, 157 Ct.Cl. 886 (1962) the Court of Claims held that stock purchased by newspaper publishers in a paper mill company to protect its paper supply was not a capital asset. The Court's opinion there produced the following syllabus:

"If securities are purchased by a taxpayer as an integral and necessary act in conduct of his business, and continue to be so held until time of their sale, any loss incurred as result thereof may be fully deducted from gross income as a business expense or ordinary loss, but if an investment purpose motivated purchase or holding of securities, any loss realized upon their ultimate disposition must be treated in accord with the capital asset provisions of Internal Revenue Code. 26 U.S.C.A. (I.R.C.1954) § 1221." 303 F.2d at 916.

■ We need not consider whether, had Richards Music survived to go on to

**6**

a profitable future, and Steadman continued to hold his shares, they might have become capital assets when holding them was no longer necessary to protect Steadman's business. However, whatever their value, the Tax Court held that they never acquired the status of capital assets during their short period of survival. The Tax Court's position here has been sustained in the following decisions of the United States Court of Claims, Waterman, Largen & Co., Inc. v. United States, 419 F.2d 845 (U.S.Ct. of Claims, Nov. 14, 1969); Penn Yan Agway Cooperative, Inc. v. United States, 417 F.2d 1372 (U.S.Ct. of Claims, 1969) and FS Services, Inc. v. United States, 413 F.2d 548 (U.S.Ct. of Claims, 1969).

We hold that Steadman's $80,000 loss in 1962 was deductible from ordinary income.

The judgment of the Tax Court is affirmed.