Edward Greenberg and Besse E. Greenberg v. commissioner.
Greenberg v. Commissioner
Docket No. 316-69.
United States Tax Court
T.C. Memo 1971-220; 1971 Tax Ct. Memo LEXIS 110; 30 T.C.M. (CCH) 937; T.C.M. (RIA) 71220; August 31, 1971, filed Alvin C. Martin, 70 Pine, New York, N. Y., for petitioners. Gerald Backer, for respondent. ATKINS
Memorandum Findings of Fact and Opinion. ATKINS, Judge: The respondent determined deficiencies in income tax for the taxable years 1960 and 1963 in the respective amounts of $13,165.64 and $4,057.11. Certain issues having been conceded, the issues remaining for decision are whether petitioners' stock in their wholly-owned corporation, as well as purported loans made by petitioners to such corporation, became worthless in 1963 entitling them to deductions with respect thereto and a net operating loss carryback to 1960. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. Petitioners, husband and wife, filed joint Federal income tax returns for the taxable years 1960 and 1963 with the district director of internal revenue, Newark, New Jersey. At the time their petition was filed herein they resided in East *112 Orange, New Jersey. Edward Greenberg will hereinafter be referred to as the petitioner. In 1923 the petitioner formed a business the principal activity of which was the manufacture of portable lamps. Thereafter, such business was successfully operated by petitioner and his brothers under the name "The Carack Company". In 1954 the business was terminated and its assets liquidated. From 1955 through June 1958 the petitioner was self-employed as a wholesale jobber and manufacturers' representative of lamps and shades. Such endeavors did not meet with much success and losses from such activities were reported on petitioner's returns for the taxable years 1955 through 1957. In July 1958 the petitioner resumed the business of lamp manufacturing. A business loss was reported on petitioner's return for the taxable year 1958, but it was not shown what portion of such loss may have been attributable to the manufacture of lamps and what portion may have been attributable to petitioner's activities as a wholesale jobber and manufacturers' representative. 938 In January 1959 the petitioner's lamp manufacturing business was transferred to The Carack Company, Inc., a New York corporation *113 owned equally by petitioner and his wife. On January 10, 1959, The Carack Company, Inc., hereinafter referred to as Carack No. 1, elected taxable status as a small business corporation pursuant to the provisions of Subchapter S of the Internal Revenue Code of 1954. On its return for the taxable year 1959, Carack No. 1 reported gross receipts of $246,910.34, gross profit of $61,290.93 and, after the deduction of other expenses, a net loss in the amount of $10,892.19. On its return for the taxable year 1960 it reported gross receipts in the amount of $429,492.13, gross profit of $120,435.99 and taxable income in the amount of $17,730.48. The profits earned by Carack No. 1 in 1960 were attributable in part to its introduction of a blow-molded plastic "bubble lamp", which was unique in the industry. Within about 6 months following the introduction of such lamp, competitors were also producing it and Carack No. 1 had lost its initial advantage. On May 2, 1961, The Carack Company, Inc., a New Jersey corporation, was formed. On August 15, 1961, 50 shares of stock of such corporation were issued to each of the petitioners in exchange for total capital contributed by them of $50,000 consisting *114 of property valued at $31,928.30 and cash in the amount of $18,071.70. Such stock was issued as small business stock pursuant to, and in compliance with, the provisions of section 1244 of the Internal Revenue Code of 1954. Thereafter, the lamp manufacturing business was carried on by The Carack Company, Inc. of New Jersey, hereinafter referred to as Carack No. 2, and Carack No. 1 became inactive. On its final return for the period January 1, 1961 to August 15, 1961, Carack No. 1 reported gross receipts of $111,207.62, gross profit of $32,366.21 and a net loss in the amount of $15,672.22. The business conducted by Carack No. 2 was the same as that previously carried on by Carack No. 1. Its product line consisted of lamps which were sold at a wholesale price of about $1.25 per lamp, largely to syndicated variety stores which, in turn, retailed them at prices ranging between $2.95 and $3.95 per lamp. On its returns for the taxable years 1961 through 1963 Carack No. 2 reported the following: Year
Gross Receipts
Gross Profit
Total Deductions
Net Loss
* 1961
$ 28,578.65
$ 8,428.04
$33,189.94
$24,761.90
1962
157,517.06
44,512.50
75,040.90
30,528.40
1963
374,659.86
77,532.06
84,051.81
6,519.75
*115 From 1961 through 1963 the petitioners, their son Robert, and the petitioner's brothers made net advances to Carack No. 2 as follows: Year
Petitioners
Robert
Brothers
1961
$25,944.30
$1,000.00
1962
33,013.89
4,200.00
$ 5,000.00
1963 4,800.00
(1,700.00)
10,000.00
Total
$63,758.19
$3,500.00
$15,000.00 Such advances, treated as loans on the books of Carack No. 2, were made to enable it to pay its bills and continue in business. Sometime during 1963 the petitioner and his son decided that the business of Carack No. 2 would be improved if its marketing were directed to discount stores and its product line upgraded to higher priced lamps selling at wholesale prices of between $8.00 and $9.00 per lamp. On December 30, 1963, the board of directors of Carack No. 2, comprised of the petitioners and their son, held a meeting. The minutes of such meeting recite that it was resolved that it was in the best interests of Carack No. 2 to dissolve and that the following plan of liquidation be adopted: (1) that an inventory of the corporation's assets and a list of its liabilities be prepared; *116 (2) that petitioner be appointed trustee for the purposes of receiving the corporation's assets, paying its creditors, and distributing the remaining assets, if any, to its shareholders; (3) that the corporation's shareholders surrender their stock for redemption upon the receipt by 939 them of such assets; and (4) that all necessary steps be taken to formally dissolve the corporation according to the laws of New Jersey. No actual liquidation of Carack No. 2 took place subsequent to the meeting of December 30, 1963. No assets were turned over to petitioner as trustee nor were any assets turned over to creditors. During 1964 the business was gradually changed over to the manufacture and sale of higher priced lamps as described hereinabove. In April 1964 Carack No. 2 was formally dissolved pursuant to the laws of New Jersey and The Carack Company, Inc., hereinafter referred to as Carack No. 3, was incorporated under the laws of New Jersey. On April 25, 1964, at the first meeting of the board of directors of Carack No. 3, comprised of petitioners and their son, it was resolved that Carack No. 3 issue 100 shares of stock (50 to petitioner, 25 to his wife, and 25 to their son) upon *117 the transfer of assets of Carack No. 2; that such stock be issued pursuant to the provisions of section 1244 of the Internal Revenue Code of 1954; and that Carack No. 3 continue the business theretofore carried on by Carack No. 2. The balance sheets of Carack No. 2 and Carack No. 3 submitted with their returns filed for the taxable years 1963 and 1964, respectively, were as follows: Carack No. 2
Carack No. 3
Assets
Dec. 31, 1963
Jan. 1, 1964
Cash
$ 19,653.21
$ 19,653.21
Accounts Receivable -
Net
19,949.21
19,949.21
Inventories
73,761.03
73,761.03
Depreciable Assets -
Net
$ 2,525.54
$ 2,525.54
Other Assets 4,349.61
4,349.61
Total Assets $120,238.60
$120,238.60
Liabilities and Capital
Accounts Payable
$ 46,213.83
$ 46,213.83
Other Current Liabili-
ties
3,576.63
3,576.63
Note Payable
18,500.00
18,500.00
Loans from Stockhold-
ers
63,758.19
1,948.14
Capital Stock
50,000.00
50,000.00
Accumulated Deficit (61,810.05)
Total Liabilities &
Capital $120,238.60
$120,238.60 The opening balance sheet of Carack No. 3 in its 1964 return was identical to the closing balance sheet of Carack No. *118 2 in its 1963 return except that the account entitled "Loans From Stockholders" had been reduced from $63,758.19 to $1,948.14. Such reduction was accomplished by charging the accumulated deficit of Carack No. 2 to its "Loans From Stockholders" account. Such entry was accompanied by the notation "Used for Loss on Liquidation". Such "Loss on Liquidation" in the amount of the accumulated deficit of Carack No. 2, namely, $61,810.05, was credited to petitioner upon the books of Carack No. 2. On its returns for the taxable years 1964 through 1968, Carack No. 3 reported the following: Gross
Gross
Total
Net Profit
Year
Receipts
Profit
Deductions
or (Loss)
1964
$350,481.91
$79,814.15
$93,609.86
($13,795.71)
1965
369,171.93
88,032.67
89,078.66
( 1,045.99)
1966
431,112.69
92,443.32
92,008.56
434.76
1967
351,350.74
84,936.80
96,679.81
( 11,743.01)
1968
295,373.36
81,483.28
94,445.02
( 12,942.89)
During the period 1964 through 1968, funds were advanced to Carack No. 3 by petitioners, their son, and petitioner's brothers. On their return for the taxable year 1963 the petitioners claimed as a deduction an ordinary loss in the amount *119 of $50,000 attributable to worthlessness of their stock in Carack No. 2. On such return they reported a short-term capital loss of $11,810.05 attributable to worthlessness of their advances to Carack No. 2 and deducted the same to the extent of $1,000. On such return they reported a net loss in the amount of $33,202.30. They thereafter claimed a net operating loss carryback deduction for their taxable year 1960. In the notice of deficiency the respondent determined that the above deductions attributable to the worthlessness of stock and advances were not allowable for 1963 because it had not been established that any deductible losses were sustained during that year. He further determined that no net 940 operating loss was sustained during such year and, consequently, that there was no net operating loss carryback to the year 1960. Opinion Section 165 of the Internal Revenue Code of 1954[1] provides for the deduction of losses attributable to securities which have become worthless during the taxable year. The respondent concedes that the stock of Carack No. 2 constituted small business stock within the meaning of section 1244 of the Code. [2]
*120 The determination of when a security becomes worthless is a factual one requiring a practical approach to the pertinent evidence of record. Boehm v. Commissioner, 326 U.S. 287. The burden of proof as to when securities have become worthless resulting in a deductible loss is upon the petitioners. Welch v. Helvering, 290 U.S. 111. The standards to be utilized in determining the taxable year in which a security becomes worthless were clearly set forth in Sterling Morton, 38 B.T.A. 1270, affd. (C.A. 7) 112 F. 2d 320. There we stated in part as follows: * * * it is apparent that a loss by reason of the worthlessness of stock must be deducted in the year in which the stock becomes worthless and the loss is sustained, that stock may not be considered as worthless even when having no liquidating value if there is a reasonable hope and expectation that it will become valuable at some future time, and that such hope and expectation may be foreclosed by the happening of certain events such as the bankruptcy, cessation from doing business, or *121 liquidation of the corporation, or the appointment of a receiver for it. Such events are called "identifiable" in that they are likely to be immediately known by everyone having an interest by way of stockholdings or otherwise in the affairs of the corporation; but, regardless of the adjective used to describe them, they are important for tax purposes because they limit or destroy the potential value of stock. The ultimate value of stock, and conversely its worthlessness, will depend not only on its current liquidating value, but also on what value it may acquire in the future through the foreseeable operations of the corporation. Both factors of value must be wiped out before we can definitely fix the loss. If the assets of the corporation exceed its liabilities, the stock has a liquidating value. If its assets are less than its liabilities but there is a reasonable hope and expectation that the assets will exceed the liabilities of the corporation in the future, its stock, while having no liquidating value, has a potential value and can not be said to be worthless. The loss of potential *122 value, if it exists, can be established ordinarily with satisfaction only by some "identifiable event" in the corporation's life which puts an end to such hope and expectation. There are, however, exceptional cases where the liabilities of a corporation are so greatly in excess of its assets and the nature of its assets and business is such that there is no reasonable hope and expectation that a continuation of the business will result in any profit to its stockholders. In such cases the stock, obviously, has no liquidating value, and 941 since the limits of the corporation's future are fixed, the stock, likewise, can presently be said to have no potential value. Where both these factors are established, the occurrence in a later year of an "identifiable event" in the corporation's life, such as liquidation or receivership, will not, therefore, determine the worthlessness of the stock, for already "its value had become finally extinct." DeLoss v. Commissioner, supra, at 803. Cf. Squier v. Commissioner, supra; Monmouth Plumbing Supply Co. v. United States, 4 Fed. Supp. 349. *123 * * * The petitioners contend that the adoption by the board of directors in 1963 of a resolution to dissolve Carack No. 2 constituted an identifiable event establishing a loss due to worthlessness of their stock. We cannot agree. Such resolution provided for the receipt by petitioner, as trustee, of the assets for the purpose of paying the creditors and distributing any remaining assets to the stockholders. While it is true that Carack No. 2 was formally dissolved in 1964 and that Carack No. 3 was formally incorporated at about the same time and carried on the business, it is clear that no assets were ever turned over to petitioner as trustee and no assets were received by the creditors of Carack No. 2. Furthermore, we cannot accept as a motivating reason for a change of corporate structure the proposition advanced by petitioners, namely, the mere upgrading of the product line from lower priced lamps to higher priced ones. Indeed, the December 30, 1963 resolution appears to us to represent no more than a transparent attempt to concoct an identifiable event for tax purposes, and we accordingly disregard it. It is, of course, well settled that despite the lack of any identifiable *124 event the petitioners may establish that the stock of Carack No. 2 became worthless during 1963 if it be shown that during such year the stock ceased to have liquidating value, that is, that the liabilities exceeded the assets, and also that such stock had no potential value, that is, that there was no reasonable expectation that the assets would exceed liabilities in the future. Charles W. Steadman, 50 T.C. 369, affd. (C.A. 6) 424 F. 2d 1. In our opinion, however, the petitioners have failed to establish either that the stock had no liquidating value during 1963 or that it had no potential value during such year. With respect to whether petitioners' stock in Carack No. 2 possessed liquidating value, testimony was adduced to the effect that a sale of the inventory of Carack No. 2, consisting of component parts utilized in the manufacture of lamps, would have produced only about 20% of the book value of such inventory. Upon the basis of such testimony, together with the facts that the balance sheet of Carack No. 2 as of December 31, 1963, showed liabilities of $132,048.65, assets of $120,238.60, and an excess of liabilities over assets of $11,810.05, the *125 petitioners contend that Carack No. 2 had no liquidating value during 1963. We cannot agree. As to the testimony with respect to the liquidating value of the inventory of Carack No. 2 we note the admission of petitioners' son that no independent appraisal of such inventory was made or sought. Such testimony was largely based upon experiences encountered during the liquidation of The Carack Company in 1954, a situation which was not shown to be comparable to that existing in 1963. More important, however, than the weakness of proof with respect to the liquidating value of inventory is the petitioners' failure to adequately respond to the position maintained by respondent, namely, that the advances made by petitioners to Carack No. 2 constituted equity rather than debt. Inasmuch as petitioners' advances to Carack No. 2 of $63,758.19 constituted almost half of the liabilities shown on its balance sheet, the resolution of such issue is critical to a finding that had the corporation been liquidated in 1963 little, if anything, would have been realized by the petitioners in their capacity as stockholders. The scanty evidence of record, namely, that the advances were recorded as loans *126 upon the books of Carack No. 2 and the testimony of the petitioners' son to the effect that they were expected to be repaid from future profits, is not sufficient to support a finding that such advances constituted debt. In view of the above, it is our conclusion that petitioners have failed to prove that their stock in Carack No. 2 had no liquidating value in 1963. Even if petitioners' stock in Carack No. 2 be viewed as having no liquidating value during 1963, it is our opinion that petitioners have failed to establish that there was no reasonable expectation of future profit so as to permit a finding that such stock had no potential value during such year. In this respect testimony was adduced to the effect that smaller concerns in the lamp manufacturing industry were either 942 being acquired by larger concerns or going bankrupt, that offers were made to sell Carack No. 2 but no buyers were to be found, and that resort to bankruptcy was not made only because of petitioner's stubborn pride in the business. We recognize that one is not required to be an incorrigible optimist with regard to the course of future events. United States v. S. S. White Dental Mfg. Co., 274 U.S. 398. *127 However, while the above testimony was not optimistic as to the financial future of Carack No. 2, its extremely general character somewhat diminished its probative weight. Indeed, other objective evidence of record, including the petitioner's obvious expertise in the lamp manufacturing business and the contemplated changeover to the manufacture of higher priced lamps, seem to us to support a reasonably optimistic view that future would be generated. The continued operation of the business under these circumstances was quite apparently not for the mere purpose of minimizing inevitable losses, but for the purpose, and with the expectation, of deriving profit. In view of the above we, therefore, cannot find that petitioners have satisfied their burden that the stock of Carack No. 2 had no potential value during 1963. The respondent's determination that petitioners sustained no deductible loss with respect to their stock in Carack No. 2 in 1963 is approved. Turning our attention to the deduction claimed by petitioners with respect to their advances to Carack No. 2, we again note their failure to establish that such advances constituted debt rather than equity. If such advances constituted *128 equity the petitioners have failed to establish their right to a deduction for the reasons discussed hereinabove. If, on the other hand, such advances constituted debt the petitioners' right to a deduction on account thereof would be governed by the provisions of section 166 of the Code. [3]Under section 166 where any nonbusiness debt of an individual taxpayer becomes worthless the loss resulting therefrom is considered a loss from the sale or exchange of a capital asset held for not more than 6 months. No deduction is allowable on account of the partial worthlessness of an individual's nonbusiness debt. Section 1.166-5 of the Income Tax Regulations.[4] Here, the petitioners themselves have treated their advances to Carack No. 2 as a nonbusiness debt by characterizing such debt as a short-term capital loss on their 1963 return. No argument is made, nor is any evidence presented, to the effect that any advances constituted a business debt. *129 If the petitioners' advances of $63,758.19 were considered as debt it is clear from the December 31, 1963 balance sheet that such advances would have been recoverable in part upon a liquidation. This is true even if we were to accept the petitioners' contention that the inventories were 943 worth only about 20% of the amount at which they were carried in the balance sheet. Thus, petitioners' claimed deduction with respect to their advances constitutes a deduction claimed on account of the partial worthlessness of a debt which, as pointed out hereinabove, is not allowable with respect to the nonbusiness debt of an individual. [5]
Accordingly, it is our conclusion that even if petitioners' advances be considered debt rather than stock, no deduction with respect thereto *130 was available to them for the taxable year 1963. Decision will be entered for the respondent. Footnotes
*. For the period May 2, 1961 to December31, 1961.↩
1. Section 165 of the Code provides in part as follows: SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * * (g) Worthless Securities. - (1) General rule. - If any security which isa capital asset becomes worthless during the taxable year, the loss resulting therefrom shall, for purposes of this subtitle, be treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset. (2) Security defined. - For purposes of this subsection, the term "security" means - (A) a share of stock in a corporation; (B) a right to subscribe for, or to receive, a share of stock in a corporation; or (C) a bond, debenture, note, or certificate, or other evidence of indebtedness, issued by a corporation or by a government or political subdivision thereof, with interest coupons or in registered form. ↩
2. Section 1244 of the Code provides in partas follows: SEC. 1244. LOSSES ON SMALL BUSINESS STOCK. (a) General Rule. - In the case of an individual, a loss on section 1244 stock issued to such individual or to a partnership which would (but for this section) be treated as a loss from the sale or exchange of a capital asset shall, to the extent provided in this section, be treated as a loss from the sale or exchange of an asset which is not a capital asset. (b) Maximum Amount for Any Taxable Year. - For any taxable year the aggregate amount treated by the taxpayer by reason of this section as a loss from the sale or exchange of an asset which is not a capital asset shall not exceed - (1) $25,000, or (2) $50,000, in the case of a husband and wife filing a joint return for such year under section 6013↩.
3. Such section provides in part as follows: SEC. 166. BAD DEBTS. (a) General Rule. - (1) Wholly worthless debts. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year. (2) Partially worthless debts. - When satisfied that a debt is recoverable only in part, the Secretary or his delegate may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. * * * (d) Nonbusiness Debts. - (1) General rule. - In the case of a taxpayer other than a corporation - (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. (2) Nonbusiness debt defined. - For purposes of paragraph (1), the term "nonbusiness debt" emans a debt other than - (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. (e) Worthless Securities. - This section shall not apply to a debt which is evidenced by a security as defined in section 165(g)(2)(C)↩. 4. Such section provides in part as follows: § 1.166-5. Nonbusiness debts. - (a) Allowance of deduction as capital loss. (1) The loss resulting from any nonbusiness debt's becoming partially or wholly worthless within the taxable year shall not be allowed as a deduction under either section 166(a) or section 166(c) in determining the taxable income of a taxpayer other than a corporation. (2) If, in the case of a taxpayer other than a corporation, a nonbusiness debt becomes wholly worthless within the taxable year, the loss resulting therefrom shall be treated as a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. * * * A loss on a nonbusiness debt shall be treated as sustained only if and when the debt has become totally worthless, and no deduction shall be allowed for a nonbusiness debt which is recoverable in part during the taxable year.↩
5. While it is not entirely clear, the petitioners' position, in effect, seems to be that there was a liquidation in 1963 as a result of which $51,948.14 of their advances was paid leaving an amount of $11,810.05 as the remaining debt, and that such latter amount became wholly worthless during 1963. Suffice it to say that any such position would have to be rejected since it is clear that no liquidation occurred.↩