DON R. HANKEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hankey v. Commissioner
Docket No. 5365-73.
United States Tax Court
T.C. Memo 1975-97; 1975 Tax Ct. Memo LEXIS 276; 34 T.C.M. (CCH) 481; T.C.M. (RIA) 750097; April 8, 1975, Filed Rex K. DeGeorge, for the petitioner. Willard N. Timm, Jr., for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in petitioner's Federal income tax in the amount of $13,871.82 for 1968. Concessions having been made by the parties, the remaining issues for decision are as follows: 1. Whether stock owned by petitioner in Hankey Industries, Ltd., became worthless in 1968 within the meaning of section 165(g)[1] and, if so, what was the amount of petitioner's basis in that stock. 2. Whether petitioner is entitled under section 163(a) to a deduction of $8,379.50 as interest paid in 1968. FINDINGS OF FACT Petitioner Don R. Hankey (hereinafter petitioner or Hankey) was a legal *278 resident of Huntington Beach, California, at the time he filed the petition herein. In 1966, when Hankey was 23 years old, he met Frank Nelson (hereinafter Nelson), a family friend. At that time, Hankey had just completed college and had not had any meaningful employment or business experience. Nelson approached Hankey regarding the possibility of engaging in a business venture in Canada. Nelson's idea was to establish a sawmill on a barge which would travel up and down river, cutting lumber and shingles for export to California, Oregon, and Washington. Nelson told Hankey that, in his opinion, the operation was feasible, would prove profitable, and would require no more than a $50,000 investment. Nelson convinced Hankey that other similar ventures had been successful. Hankey's discussions with Nelson culminated in an oral agreement to pursue the business venture together. As his contribution to the venture, Nelson promised to furnish certain equipment valued at $25,000 to $50,000 and the know-how necessary to operate the business. On August 9, 1966, as a result of Nelson's representations, Hankey borrowed $50,000 from his mother. The loan was evidenced by a promissory note bearing *279 interest at the rate of 10 percent per annum. Hankey never paid any interest on this loan to his mother. Petitioner's mother had obta2ned the funds through E. F. Hutton by pledging certain stocks held in her own name. This loan was later transferred to another stockbroker, Jefferies and Company, to whom petitioner's mother paid interest in the amount of $8,379.50 on May 13, 1968. In August 1966, Hankey went to Canada to commence the sawmill operation. After arriving in Vancouver, Hankey established several checking and savings accounts in a local bank in which he deposited approximately $50,000 during August and September 1966. Hankey retained Canadian lawyers who, on August 23, 1966, completed the incorporation of Hankey Industries, Ltd. (hereinafter sometimes referred to as the corporation), a Canadian corporation with offices located in Vancouver, Province of British Columbia. All of the corporation's issued stock was held by Hankey, save for 2 shares issued to two Canadian attorneys, 1 share each. Hankey was president of the corporation and was the sole active corporate officer from its inception. Following incorporation, Hankey and Nelson agreed the latter would be issued *280 50 percent of the issued stock if, as, and when the corporation produced a net profit, as defined by the parties in a written escrow instrument. One of the bank accounts, referred to above, was set up in the name of the corporation and Nelson was authorized to draw checks on that account. Hankey and Nelson traveled together in Canada in order to procure and transport equipment necessary to commence business. Subsequently, in October or November 1966, when the equipment contributed by Nelson arrived in Vancouver, Hankey realized that much of it was either encumbered by Nelson's borrowing against it, was unsuitable for use on the barge, or was defective. It was not, therefore, worth the amount of money Nelson had represented he would contribute to the venture. As a result, a dispute arose between Hankey and Nelson. Hankey called a board of directors meeting to discuss Nelson's failure to comply with their agreement. The board concluded that Nelson had failed to contribute unencumbered or useful equipment to the venture, and that he had taken corporate funds for which he failed to account. Accordingly, the board decided to withdraw his authority to write checks on the corporation's *281 account, and the bank was so advised. On October 28, 1966, Nelson was informed through counsel retained by Hankey, that Hankey considered their original oral agreement breached because of Nelson's failure to make good on certain representations, including the value of the equipment he was to contribute, the total amounts of capital necessary to commence profitable operations, and the promised contribution of skills and know-how. At this point, Hankey considered the business his own. Moreover, he felt he had been swindled by Nelson. and, based on consultations with his attorneys, he concluded that there existed a bona fide cause of action against Nelson. At the end of 1966, while the corporation was without any substantial amount of working capital and had not yet produced any revenues, its assets, including equipment and cash, clearly exceeded its liabilities. Hankey tried to get operations underway without Nelson's help. He employed some part-time laborers and proceeded to educate himself about the lumber and shingle industry. Hankey soon realized that he would need more capital to commence business operations and that much of the equipment acquired by the corporation was *282 unsuitable to the operations contemplated. He therefore held an auction on February 25, 1967, selling some of the equipment, while retaining other machinery he deemed suitable for the corporation's use, including shingle cutters, a compressor, a forklift, a plane, and several engines. The auction produced the following receipts: Total from the sale
$3,308.75
Less Commission
455.81
Less Cartage and Labor
325.01
Total net from the sale
$2,527.93
The equipment Hankey retained was stored on an open lot. After the auction, Hankey tried, without success, to borrow additional capital from some Canadian banks. At this time he again consulted his Canadian attorneys with reference to suing Nelson. About 6 weeks after the auction, Hankey went to the United States, hoping to raise the additional capital he needed to pursue the business venture and return to Canada to resume setting up the business. At the time Hankey returned to the United States, the corporation's assets, which consisted of the equipment not sold at the auction and some cash, exceeded its liabilities. This financial posture remained stable throughout the end of 1967. During the period extending from *283 August 1966 to September 1967, Hankey had expended $31,258.83 as his investment in or on behalf of Hankey Industries, Ltd. In early 1968, after failing to acquire additional funds in California, Hankey returned to Canada. He found that much of the equipment he had stored had been stolen, dismantled, or had deteriorated to the point it was neither usable nor salable. He was also advised by his attorneys that there was little chance of collecting any money from Nelson since Nelson already had a number of judgments against him. The condition of the equipment, the news about Nelson, and the unavailability of capital, convinced him that continued pursuit of the business venture would be futile. On his Federal income tax return for 1968, Hankey deducted $26,282 as a loss incurred on section 1244 stock attributable to his investment in Hankey Industries, Ltd. In his notice of deficiency, respondent disallowed the claimed loss in full on the grounds that it was not established that Hankey was entitled to a loss for section 1244 stock or a loss under any other section of the Internal Revenue Code of 1954 for the taxable year 1968. ULTIMATE FINDINGS OF FACT 1. Petitioner's stock in Hankey *284 Industries, Ltd., became worthless in 1968. 2. Petitioner invested $31,258.83 in Hankey Industries, Ltd. 3. Petitioner did not pay $8,379.50 in interest in 1968. OPINION Petitioner has quite obviously had difficulty in formulating his legal position with respect to the deductibility of the loss he incurred on his investment in Hankey Industries, Ltd. He deducted $26,282 on his 1968 return as a loss on section 1244 stock. Since section 1244 applies only to stock in domestic corporations, petitioner apparently came to recognize, during the audit process, that the deduction was not allowable on that ground. In his original petition in this Court, petitioner alleged that the Canadian sawmill venture was carried out as an individual rather than a corporate venture, that his use of a corporate bank account and other indicia of a corporate operation was inadvertent, and that he was entitled to the deduction as a loss incurred in the business. Finally, prior to the trial, petitioner abandoned his position that the Canadian venture was a sole proprietorship; he amended his petition to allege that he made an investment of $50,000 in the Canadian corporation which became worthless in *285 1968. On this ground, he claims a deduction under section 165(g)[2]/ for a capital loss in that amount in 1968. Further, he alleges that he had made an $8,000 payment of interest for which he had failed to claim a deduction on his 1968 return. Respondent has stipulated that during the period August 1966 to September 1967, funds *286 were expended in the amount of $26,282, evidenced by invoices and/or checks "written on the account of Hankey Industries, Ltd., account number 107-263-6." Petitioner spent all these funds. A careful review of the evidence submitted at the trial convinces us that additional sums, sufficient to bring the grand total to $31,258.83, were expended by petitioner through or on behalf of the corporation. While the record shows that petitioner deposited approximately $50,000 in the various Canadian bank accounts during 1966 and 1967, the evidence does not support a finding that the full $50,000 was deposited to the credit of the corporation or expended for its purposes. The record fails to show that the amount in excess of $31,258.83 was not expended for personal purposes. Moreover, some of the documents offered to substantiate certain items duplicate other substantiating materials. Accordingly, petitioner's basis in the stock, which governs the amount deductible as a loss, was $31,258.83. Secs. 165(b), 1011, and 1012. The more difficult question is with respect to the year in which the corporation's stock became "wholly" worthless, sec. 1.165-5(c), Income Tax Regs. *287 "A mere shrinkage in the value of stock * * * even though extensive, does not give rise to a deduction * * * if the stock has any recognizable value on the date claimed as the date of loss." Sec. 1.165-4(a), Income Tax Regs. The issue is factual. Boehm v. Commissioner,326 U.S. 287, 293 (1945), rehearing denied 326 U.S. 811 (1946); Genecov v. United States,412 F.2d 556, 560 (C.A. 5, 1969). Respondent maintains that the stock lost its value either in 1966 or, as a result of the auction, in 1967. Petitioner contends that, after the auction and until 1968, the corporation still owned the equipment not sold at the auction, had some cash, and had a bona fide claim egainst Nelson for failure to account for corporate funds and for failure to carry out his pledge to provide usable equipment for the sawmill venture. This Court has repeatedly stated that the applicable test to be used in making a determination as to the worthlessness of stock was accurately declared in Sterling Morton,38 B.T.A. 1270, 1278-1279 (1938), *288 affd. 112 F.2d 320 (C.A. 7, 1940), as follows: The ultimate value of stock, and conversely its worthlessness, will depend not only on its current liquidating value, but also on what value it may acquire in the future through the foreseeable operations of the corporation. Both factors of value must be wiped out before we can definitely fix the loss. If the assets of the corporation exceed its liabilities, the stock has a liquidating value. If its assets are less than its liabilities but there is a reasonable hope and expectation that the assets will exceed the liabilities of the corporation in the future, its stock, while having no liquidating value, has a potential value and can not be said to be worthless. The loss of potential value, if it exists, can be established ordinarily with satisfaction only by some "identifiable event" in the corporation's life which puts an end to such hope and expectation. See, e.g., Paul J. Byrum,58 T.C. 731, 733 (1972). While we are without the benefit of balance sheets covering the critical periods in applying the Sterling Morton criteria, cf. Mahler v. Commissioner,119 F.2d 869, 872 *289 (C.A. 2, 1941); Charles W. Steadman,50 T.C. 369, 377 (1968), affd. 424 F.2d 1 (C.A. 6, 1970), certiorari denied 400 U.S. 869 (1970), the record and exhibits submitted at trial negative a finding a worthlessness during 1966 or 1967. As set forth in our Findings, during both years, the corporation's assets, consisting of equipment and cash, exceeded its liabilities. With respect to 1967 in particular, the banking data put into evidence reflect a balance in the corporate bank account, and there is no evidence of any corporate liabilities remaining outstanding at the end of the year. Thus, at the close of 1967, the stock still retained some liquidating value. In 1968, upon his return to Canada, petitioner discovered that the machinery he had stored had lost all value due to pilferage and unexpected deterioration. At this point, the stock ceased to retain any liquidating value. Cf. Sterling Morton,supra.Moreover, any potential value the stock might have had at this point was decisively destroyed when local counsel, as a result of investigations spurred by petitioner's periodic consultations, concluded that further pursuit of Nelson *290 for breach of contract, a cause of action from which petitioner had reasonably expected to derive additional working capital for the corporation, was useless. This conclusion by his lawyers was an "identifiable event," cf. Sterling Morton,supra at 1278-1279; Mahler v. Commissioner,supra at 872, which signaled the stock's worthlessness. Thereafter, pursuit of the business was futile. It was at this point, in 1968, that petitioner's stock in Hankey Industries, Ltd., became worthless, within the meaning of section 165(g). See Sterling Morton,supra;Mahler v. Commissioner,supra.He entitled to a capital loss deduction in that year. The final issue to be decided involves petitioner's claimed deduction for interest paid to his mother in 1968. In order for petitioner, a cash basis taxpayer, to be entitled to a deduction under section 163(a), the interest must be slown to have been paid during the taxable year. No proof of payment has been offered by petitioner, apart from proof that his mother paid interest to stockbrokers in 1968, in the same amount petitioner claims he paid. On consideration of all the *291 evidence, we have found as an ultimate fact that petitioner did not pay the claimed amount of interest to his mother in 1968. The deduction for interest, therefore, is not allowable. To reflect the foregoing, as well as concessions made by the parties, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.↩
2. /SEC. 165. LOSSES. (g) Worthless Securities.-- (1) General rule.--If any security which is a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall, for purposes of this subtitle, be treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset. (2) Security defined.--For purposes of this subsection, the term "security" means-- (A) a share of stock in a corporation; (B) a right to subscribe for, or to receive, a share of stock in a corporation; or (C) a bond, debenture, note, or certificate, or other evidence of indebtedness, issued by a corporation or by a government or political subdivision thereof, with interest coupons or in registered form. * * * * *↩