CURTIS R. RICHMOND AND BARBARA Y. RICHMOND, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Richmond v. Commissioner
Docket No. 2681-74
United States Tax Court
T.C. Memo 1980-465; 1980 Tax Ct. Memo LEXIS 122; 41 T.C.M. (CCH) 206; T.C.M. (RIA) 80465; October 20, 1980, Filed J. Wiley Jones, for the petitioners. Richard W. Kennedy, for the respondent. GOFFE
MEMORANDUM OPINION GOFFE, Judge: The Commissioner determined deficiencies of $21,658.33 and $74,753 in petitioners' Federal income tax for the taxable years 1967 and 1968, respectively. There remain, after concessions by petitioners, two issues for our decision: (1) Whether the unpaid portion of a loan made by Curtis R. Richmond (hereinafter petitioner) to Ronald Schmidt became a "wholly worthless debt" in 1968, thus allowing its deduction in that year under section 166, Internal Revenue Code *125 of 1954; [1] and (2) Whether a partnership in which petitioner held a partnership interest sustained a deductible loss for Omega Equities Corporation securities due to theft or worthlessness in 1968. All of the facts herein were stipulated, and the case was submitted under Rule 122 of the Tax Court Rules of Practice and Procedure. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners Curtis R. and Barbara Y. Richmond, husband and wife, timely filed joint Federal income tax returns for the taxable years 1967, 1968, 1970, and 1971. They resided in Los Angeles, California, at the time they filed their petition herein. During the years here involved, petitioner was a stock broker for the firm C. R. Richmond and Co. In 1968 petitioner loaned $20,000 to an employee, Ronald Schmidt (Schmidt). The loan was supposed to be repaid in full in 90 days but was not. By the end of 1968, Schmidt had repaid $8,800 of the debt, and continued to owe petitioner $11,200. Over the next two years, petitioner unsuccessfully attempted to collect the unpaid *126 balance of the loan. Schmidt never repaid the remaining $11,200 balance of the loan. Petitioner finally fired Schmidt. Petitioners deducted the unpaid amount of the Schmidt loan as a business bad debt on their joint Federal income tax return for the taxable year 1970. Late in 1968, petitioner decided to invest in JBL Investment Company (JBL), a California limited partnership of which John B. Licata was the sole general partner. On November 18, 1968, petitioner contributed $80,000 to the limited partnership in exchange for a limited partnership interest. The only investment owned by JBL was Class A capital stock of Omega Equities Corporation (Omega). The stock was supposedly "lettered stock" (stock purportedly issued pursuant to an exemption from registration) and was purchased by JBL for approximately half of its current market value. The promoters of Omega were promising that the lettered stock would be registered soon. During 1968, Omega was considered to be an "emerging" conglomerate. It was experiencing rapid growth, primarily by stock-for-stock exchanges, but had no earnings record. In the second half of 1968, Omega stock began to increase rapidly in value (from *127 $.70 a share on April 30, 1968, to $35 a share on December 9, 1968), due to both the market perception of Omega as a mini-conglomerate and the manipulations of insiders. This rapid rise in stock value brought Omega and its insiders to the attention of the Securities and Exchange Commission (SEC). After some preliminary investigations, the SEC suspended over-the-counter trading in Omega stock on December 20, 1968. The SEC discovered multiple improprieties on the part of several corporate insiders. As a prerequisite to the lifting of the suspension in trading, the SEC required Omega to divest itself of about 20 percent of its acquisitions, which divestiture entailed a rescission of the sales of stock to certain insiders. The suspension of trading in Omega stock was terminated on April 28, 1969, so that over-the-counter trading in the stock resumed on April 29, 1969. Petitioners claimed that JBL suffered a total theft or worthlessness loss on the Omega stock in 1972, and, thus, deducted $80,000 on their 1972 joint Federal income tax return as their allocable share of the partnership loss. Petitioners sought and obtained a tentative carryback of net operating loss from their taxable *128 year 1970 to their taxable years 1967 and 1968, which net operating loss was partially attributable to the bad debt loss deduction with respect to the unpaid Schmidt loan. The Commissioner determined a deficiency in petitioners' Federal income taxes for their taxable years 1967 and 1968 based partially upon his disallowance of the bad debt loss claimed on petitioners' 1970 Federal income tax return. Petitioners concede that the loss attributable to the Schmidt loan is not deductible in 1970; however, they now contend that the loss was sustained in 1968. The Commissioner denies that the loss attributable to the uncollected portion of the Schmidt loan was sustained in 1968. With regard to the theft or worthlessness loss attributable to petitioner's interest in JBL, petitioners, who originally sought to deduct such loss on their 1972 joint Federal income tax return, now contend that such loss occurred and is deductible in 1968. This issue was raised by petitioners in an amendment to their petition. The Commissioner denies that such loss, if any, occurred in 1968. The deficiencies determined by the Commissioner were embodied in a statutory notice of deficiency which was mailed *129 to petitioners on January 18, 1974. The petitioner herein was mailed to the Court on April 16, 1974, and was received by the Court on April 19, 1974. Petitioners deducted an $11,200 bad debt loss with regard to the Schmidt loan on their joint Federal income tax return for the taxable year 1970. Such deduction contributed to a sizeable net operating loss which petitioners carried back to their taxable years 1967 and 1968, for which years they requested and were allowed tentative carryback adjustments under sections 172 and 6411. The Commissioner, by determining a deficiency within the statutory period for determining deficiencies in petitioners' 1970 income tax, timely determined deficiencies in petitioners' 1967 and 1968 income taxes, which deficiencies resulted from the Commissioner's partial disallowance of the net operating loss carryback. Sec. 6501(h). Petitioners having timely filed their petition herein, we have jurisdiction to rule on the correctness of such deficiency determinations. Sec. 6213(a). Petitioners stipulated that they now claim that the Schmidt bad debt loss is deductible in 1968. By implication they concede that their deduction of the loss on their *130 1970 return was erroneous. Whether conceded or not, petitioners failed to establish any facts which would prove that the Schmidt loan became worthless in 1970. Petitioners bear the burden of proving such facts, and their failure to do so must result in a decision that the unpaid portion of the Schmidt loan did not become worthless in 1970. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Of course, it cannot be doubted that we have jurisdiction to recompute petitioners' income for a year not before the Court (here 1970) in order to correctly determine the amount of a net operating carryback to a taxable year in issue. Sec. 6214(b); Lone Manor Farms, Inc. v. Commissioner, 61 T.C. 436, 440 (1974), affd. without published opinion 510 F.2d 970 (3d Cir. 1975). [2]
The remaining issues in this controversy can be *131 characterized as requests by petitioner for this Court to exercise its jurisdiction under section 6512(b) to determine an over-payment. Petitioners' contentions that the unpaid balance of the Schmidt loan became worthless in 1968, and that petitioner's partnership interest in JBL was stolen or became worthless in 1968, are requests for a determination by this Court of an overpayment. We need not decide whether the Commissioner's statutory notice was timely mailed (and, therefore, whether we have jurisdiction to determine such overpayments) under section 6501(h), [3] because there is independent statutory validation for respondent's seemingly tardy statutory notice of deficiency. *132 Because we have found that there is a deficiency in petitioners' Federal income tax for taxable year 1968, if we further find that they also made an overpayment for such year, we would have jurisdiction to determine the amount of such overpayment. Sec. 6512(b)(1). The amount which we may determine as an overpayment is limited by section 6512(b)(2), which provides: SEC. 6512. LIMITATIONS IN CASE OF PETITION TO TAX COURT. (b) OVERPAYMENT DETERMINED BY TAX COURT.-- (2) LIMIT ON AMOUNT OF CREDIT OR REFUND.--No such credit or refund shall be allowed or made of any portion of the tax unless the Tax Court determines as part of its decision that such portion was paid-- (A) after the mailing of the notice of deficiency, (B) within the period which would be applicable under section 6511(b)(2), (c), or (d), if on the date of the mailing of the notice of deficiency a claim had been filed (whether or not filed) stating the grounds upon which the Tax Court finds that there is an overpayment, or *133 (C) within the period which would be applicable under section 6511(b)(2), (c), or (d), in respect of any claim for refund filed within the applicable period specified in section 6511 and before the date of the mailing of the notice of deficiency-- (i) which had not been disallowed before that date, (ii) which had been disallowed before that date and in respect of which a timely suit for refund could have been commenced as of that date, or (iii) in respect of which a suit for refund had been commenced before that date and within the period specified in section 6532. We here focus on the language of section 6512(b)(2)(B), which allows a credit or refund for amounts that were paid during the applicable periods under section 6511(b)(2), (c), (d), or (g), assuming that an appropriate claim for refund had been filed on the date of the mailing of the statutory notice of deficiency. Here, the limitations period for the taxable year 1968 began to run on April 15, 1969. Sec. 6513(a). Because the overpayment claim relates to bad debts and worthless securities, the appropriate limitations period *134 is 7 years. Sec. 6511(d)(1). Thus, the hypothetical refund claim would have had to have been filed prior to April 15, 1976. The statutory notice of deficiency was mailed on January 18, 1974, well within the applicable period of limitations. Thus, we may determine that all or part of the taxes paid by petitioners for their taxable year 1968 was an overpayment. Having decided that we have jurisdiction to determine an overpayment in the amount petitioners request, we must now decide whether such a determination is appropriate. We agree with respondent that it is not. Petitioners contend that petitioner's loan to Schmidt is deductible in 1968 as a worthless business bad debt under section 166(a)(1). Petitioner has the burden of proving that the debt became worthless in 1968. Mayes v. Commissioner, 21 T.C. 286 (1953). For the debt to have become worthless in 1968 there must have been identifiable events in 1968 which show that there was no hope for recovery of the debt. Dallmeyer v. Commissioner, 14 T.C. 1282 (1950). *135 Petitioner has not produced any evidence of any identifiable events showing no hope for recovery.The fact that petitioner tried to collect the balance of the loan for two years after 1968 is evidence contrary to his position that there was no hope of recovering the debt. If petitioner did not hope for recovery then he would not have continued to try and collect the debt. Petitioners have failed to prove that the debt was worthless at the end of 1968. Therefore, petitioners' request that we determine an overpayment due to an $11,200 bad debt deduction in taxable year 1968 is denied. Petitioners also contend that they are entitled to a deduction for theft loss or worthless securities under section 165 for their taxable year 1968. Petitioners have the burden of establishing the theft of the stock under state law. Arcade Realty Co. v. Commissioner, 35 T.C. 256 (1960). They contend that there was a theft because the stock was worthless at the time of its purchase and that the partnership purchased the stock in reliance on false representations made by the Omega promoters. *136 To establish a theft for obtaining property by false representations under California law petitioners must show: (1) that the Omega promoters made a false representation; (2) that the representation was made with the intent to defraud; and (3) that JBL was in fact defrauded in that the partnership parted with its property in reliance upon the false representation. People v. Gibson, 275 Cal. App. 2d 198, 79 Cal. Rptr. 693 (2d Dist. Ct. App. 1969). The only representation by the Omega promoters that petitioners have referred to is an alleged statement that the lettered stock would be registered. For this to have been a false representation petitioners must prove that the Omega promoters knew the statement to have been false.Because petitioners have not established the element of false representation, theft by false representation has not been proven under California law. Petitioners claim, in the alternative, that the Omega stock became worthless in 1968.Petitioners have the *137 burden of showing loss due to worthlessness of stock by identifiable events. Boehm v. Commissioner, 326 U.S. 287 (1945). To satisfy this burden petitioners must show that the stock had no liquidating value and no potential value. Steadman v. Commissioner, 50 T.C. 369 (1968), affd. 424 F.2d 1 (6th Cir. 1970), cert. denied 400 U.S. 869 (1970). They have shown neither. Petitioners' contention that the SEC's temporary suspension of over-the-counter trading of the registered stock of Omega was an identifiable event indicating the worthlessness of lettered stock of Omega is without merit. The restriction was eventually lifted and over-the-counter trading resumed in April 1969.Petitioners claim that, even though trading of registered Omega stock was resumed, there was no market for lettered Omega stock. Petitioners have introduced no evidence to support this claim nor have they introduced evidence proving that there was no potential value for lettered Omega stock. Petitioners have failed to prove any identifiable events which caused the Omega stock to become worthless in 1968. Because petitioners have failed to prove *138 that the stock became worthless or that there was a theft loss in 1968, the JBL partnership suffered no deductible loss relating to the stock in 1968 and, therefore, petitioners' request that we determine an overpayment with regard to petitioner's allocable share of the partnership's loss is denied. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. Johnson v. Commissioner, T.C. Memo. 1980-435↩ (September 29, 1980).
3. In order to come within the ameliorative provisions of sec. 6501(h), a deficiency must be attributable to * * * a net operating loss carryback * * *." We have held that the Commissioner may not use the extended limitations period of section 6501(h) to assess a deficiency attributable to items unrelated to the loss carryback. Bouchey v. Commissioner, 19 T.C. 1078 (1953); Leuthesser v. Commissioner, 18 T.C. 1112 (1952). Assuming, arguendo, that petitioners' claims of overpayment are not attributable to a net operating loss, query whether under sec. 6501(h) petitioners are likewise barred from asserting overpayments due to items unrelated to the net operating loss to which that section refers. Cf. Jones v. Commissioner, 71 T.C. 391↩ (1978).