JOHN A. AND SUZANNE H. KUHNEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kuhnen v. Commissioner
Docket No. 8018-78.
United States Tax Court
T.C. Memo 1981-600; 1981 Tax Ct. Memo LEXIS 134; 42 T.C.M. (CCH) 1438; T.C.M. (RIA) 81600; October 19, 1981. Leland W. Hutchinson, Jr. and Mark W. Weisbard, for the petitioners. Leslie A. Klein, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $ 8,121 in petitioners' Federal income tax for the year 1975. The disposition of some issues has been agreed to by the parties. The two issues presented for decision are: (1) whether petitioner John A. Kuhnen has established *135 a basis of $ 20,000 in his stock in the United States Insulation Co., Inc.; (2) whether the petitioner's loss on the stock, which became worthless in 1975, is deductible under section 165[1] as an ordinary loss. FINDINGS OF FACT Some facts are stipulated and are so found. John A. Kuhnen (petitioner) and Suzanne Kuhnen, husband and wife, were legal residents of Glencoe, Illinois, when they filed their petition in this case. They filed their joint Federal income tax return for 1975 with the Internal Revenue Service at Chicago, Illinois. From 1955 to 1969 the petitioner was employed as a sales engineer for Sprinkmann and Sons, a company which sold and installed insulation. His salary in 1955 was $ 15,000. In 1965 it was $ 21,000. From 1966 to 1969 it was $ 35,000. As early as 1965 the petitioner realized that his family of eight was having difficulty living on his salary at Sprinkmann and Sons. Consequently, during 1965 he formed United States Insulation Co., Inc. (hereinafter the "Company"). A certificate of incorporation *136 was issued by the Secretary of State of Illinois on September 8, 1965. Petitioner chose to organize the Company to obtain limited liability and to separate it from his personal life. In 1965 the petitioner contributed $ 1,000 in return for the authorized issuance of 996 shares of stock in the Company. Although its corporate status was maintained, the Company did not conduct any business until mid-1969 during which period the petitioner continued to work for Sprinkmann and Sons. In 1969 he again evaluated his financial situation. He decided that his salary at Sprinkmann was not sufficient and therefore he activated the Company which began carrying on the business of selling and installing insulation, the same work previously done by petitioner at Sprinkmann. Petitioner's primary motive in activating the Company was to earn more income to enable him to finance the college educations of his children. At the time the Company began the active conduct of its business the petitioner entered into a written agreement with Richard Shofstall, who was then a distributor for the Dow Chemical Company, under the terms of which the petitioner would contribute an additional $ 19,000 to *137 the Company and Mr. Shofstall would contribute $ 15,000. Based on his experience in the business, Mr. Shofstall had informed petitioner that in his opinion the Company needed a total capitalization of $ 35,000 to begin operations. As part of the agreement, the Company was able to purchase insulation materials on open account from Dow Chemical, paying for such materials from the cash flow received from the resale and installation of such materials, a period usually more than 60 days. No other supplier would sell insulation materials to the Company on terms other than normal 30-day open account conditions. Pursuant to his agreement with Mr. Shofstall, the petitioner contributed an additional $ 14,000 in cash and a $ 5,000 note to the Company in 1969 and early 1970 in return for 19,000 shares of stock, and Mr. Shofstall contributed $ 15,000 in cash for 15,000 shares. Petitioner later paid off the $ 5,000 note to the Company in cash. Petitioner's salary with the Company in 1969 began at $ 40,000 per year. It was raised to $ 50,000 in 1970, to $ 52,500 in 1972, and in 1973 and 1974 the petitioner was paid $ 60,000 per year. This salary was reduced for two months in 1975 when *138 the Company went into a chapter 11 bankruptcy proceeding. While the Company was active, the petitioner was its only manager. He devoted his full time and attention to the Company and he had no other employment. In 1970 the name of the Company was changed to U.S. Insulation Co., Inc. In 1972 the Company purchased Mr. Shofstall's stock for $ 17,000, which represented a return of the money contributed by him plus an interest factor of approximately 4-1/2 percent for the use of his money. In 1974 the certificates representing shares of stock issued to petitioner were destroyed in a fire along with most of the Company's records and some of the petitioner's bank records. No dividends were ever paid by the Company. There was never an active market for the Company's stock and, in petitioner's opinion, there was no prospect that it would appreciate in value. In 1974 the Company had buildings and other fixed depreciable assets having a book value, after an allowance for depreciation, in the amount of $ 41,401. Because of a change in the policy of its supplier, Dow Chemical, the Company went into bankruptcy in 1975, and its stock became worthless in that year. Petitioner's *139 only stock investments consisted of four open market purchases in 1972 totaling about $ 9,000. These were made on the advice of a friend and the stocks were sold at a loss by 1974. On his Federal income tax return for 1975 the petitioner claimed an ordinary loss of $ 20,000 on his shares of the Company's stock. In his notice of deficiency dated April 6, 1978, respondent disallowed the claimed loss deduction on the grounds that the petitioner had not established his basis in the stock and that, if there was a loss deduction, it was a capital loss subject to the limitation of section 1211. ULTIMATE FINDINGS OF FACT 1. Petitioner's basis in the shares of stock he owned in the Company is $ 20,000. 2. In 1969 and subsequently the petitioner was in the trade or business of being a salaried employee engaged in selling insulation materials for the Company. 3. Petitioner purchased and held the Company's stock as an integral and necessary act in the conduct of his business and with a predominant business, rather than investment, motive. OPINION I. Basis in Stock
This is essentially a factual issue. In our judgment the petitioner has submitted sufficient evidence *140 to establish his $ 20,000 basis in the worthless stock of the Company.
Respondent acknowledges on brief that his original determination is incorrect and that the petitioner has proved $ 11,000 of the claimed $ 20,000 of cash contributions he made in purchasing the Company's stock. However, he challenges two of the five contributions the petitioner made, namely, (1) the $ 4,000 in cash which he contributed when the articles of incorporation were amended in early 1970 and (2) the $ 5,000 in cash he used to pay off the note given to the Company when he purchased the stock. We reject his challenge to both cash contributions. We think the documentary evidence is consistent with and corroborates the petitioner's unequivocal and uncontradicted testimony. Therefore, the petitioner has satisfied his burden of proving his basis in the stock.See and compare Alameda Realty Corporation v. Commissioner, 42 T.C. 273, 283 (1964); Sharaf v. Commissioner, T.C. Memo. 1954-231, reversed on other grounds 224 F.2d 570 (1st Cir. 1955). II. Nature of Loss
There are no disputed facts with respect to the characterization of petitioner's loss as ordinary *141 or capital in nature. Only a legal interpretation is required. Under section 165[2] and section 1.165-5(b), Income Tax Regs., if any security which is not a capital asset becomes worthless during the taxable year, the loss resulting therefrom may be deducted as an ordinary loss. In Corn Products Refining Co. v. Commissioner, 350 U.S. 46 (1955), the Supreme Court concluded that losses resulting from the sale of securities held in connection with the everyday operations of a business are ordinary losses. Petitioner contends that (1) since he acquired and held the Company's stock in order to secure and protect his stream of income, the stock was not a capital asset, and the loss resulting from *142 its worthlessness is an ordinary loss; (2) he acquired and held the stock as an integral and necessary act in the conduct of his business; and (3) he purchased and held stock with a predominant business motive as opposed to a predominant investment motive. To the contrary, respondent argues that the petitioner did not purchase the stock as an integral and necessary act in the conduct of his business, but rather purchased it, placing funds at risk in the Company, because the funds were needed to begin operations. Thus, respondent argues, the petitioner's contributions were purely capital in nature and constituted the initial capitalization of the Company. Hence respondent contends that the stock was a capital asset and that the petitioner's loss is a capital loss. We agree with the petitioner. The main thrust of respondent's position is that petitioner's loss was capital in nature because his sole trade or business was being an employee of Sprinkmann and Sons. However, in our view the determination of whether the stock was purchased in connection with the petitioner's trade or business *143 is not so narrow or so mechanical. All that is required is that petitioner's "primary motivation" in making the contributions was to obtain employment with and to secure his salary from the Company. See Steadman v. Commissioner, 50 T.C. 369, 379-380 (1968), affd. 424 F.2d 1 (6th Cir. 1970), cert. denied 400 U.S. 869 (1970); Hirsch v. Commissioner, T.C. Memo. 1971-235. [3] These opinions have applied a two-pronged test requiring proof of the business necessity for the purchase of the stock and the potential source of salary income which would result from purchasing it. Here the petitioner has established to our satisfaction both essential elements. First, the business necessity is shown by the fact that his salary at Sprinkmann was insufficient to support his family, especially the college education of his four oldest children. Second, he has shown that the Company was a good potential source of income for him. See and compare analogous opinions under section 166 in LaStaiti v. Commissioner, T.C. Memo. 1980-547; Carter v. Commissioner, T.C. Memo. 1979-447; Haslam v. Commissioner, T.C. Memo. 1974-97. *144 We are convinced that the petitioner's primary motivation in organizing the Company and in purchasing its stock was to secure a salary.While the Company was active, he devoted his full time and energy to it and had no other employment. When the Company went bankrupt in 1975, he lost his salary. The evidence establishes that the petitioner fromed the Company and purchased its stock to enable him to carry on his trade or business in which he *145 was trained and experienced. The Company was run solely by him and he provided its only expertise in the insulation business. When he contributed his cash in exchange for stock, he did so in order to operate in his trained field of business in a manner which allowed him to receive a salary on which he and his family could live. His salary later increased to $ 60,000 per year as compared to the $ 35,000 he earned at Sprinkmann. The petitioner's agreement with Mr. Shofstall and his special credit arrangements with Dow Chemical for the purchase of necessary materials further establish that the purchase of the stock was an integral and necessary act in the conduct of petitioner's business. See Schlumberger Technology Corp. v. United States, 443 F.2d 1115 (5th Cir. 1971); Irwin v. United States, 558 F.2d 249 (5th Cir. 1977); Booth Newspapers, Inc. v. United States, 170 Ct. Cl. 220, 303 F.2d 916 (1962). Significantly, there is no evidence in this record that the petitioner purchased or held the stock as an investment. No dividends were ever paid by the Company and there was never any prospect that a dividend would be paid. There *146 was also no market for the stock and no prospect that it would appreciate in value. In addition, the repurchase of Mr. Shofstall's stock shows a lack of investment potential in it.The purchase price in that arm's length transaction was determined by returning the amount that Mr. Shofstall had contributed to the Company plus an amount at the prevailing bank interest rates, to cover the cost of using his money.Neither the petitioner nor Mr. Shofstall viewed the stock they held in the Company as an investment. The mere fact that the Company needed petitioner's contributions to begin business did not render such contributions capital in nature. Petitioner's primary motivation is the critical inquiry, not the use to which the Company put the funds. Accordingly, we conclude that there was a proximate relationship between petitioner's business and the source of the loss. Hirsch v. Commissioner, supra. He has proved that his stock in the Company was an ordinary asset and that his resulting loss is an ordinary one deductible under section 165. To reflect concessions and our conclusions on the disputed issues, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise indicated.↩
2. SEC. 165. LOSSES. (a) General Rule.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. (c) Limitation on Losses of Individuals.--In the case of an individual, the deduction under subsection (a) shall be limited to-- (1) loss incurred in a trade or business;↩
3. On brief respondent appears to concede that, since the stock was purchased prior to March 13, 1978, and became worthless prior to September 13, 1978, the "predominant business motive" standard of Rev. Rul. 75-13, 1975-1 C.B. 67, is applicable rather than the "substantial investment motive" standard, as adopted in Rev. Rul. 78-94, 1978-1 C.B. 58. See W.W. Windle Co. v. Commissioner, 65 T.C. 694 (1976), appeal dismissed 550 F.2d 43 (1st Cir. 1977), (stock purchased with a substantial investment purpose is a capital asset even if there is a more substantial business motive for the purchase); see also Bell Fibre Products Corp. v. Commissioner, T.C. Memo. 1977-42↩.